38   289
60a  652
38   289
165  238
38   289
d91a  ¹399

In the Matter of the Rule upon the Western Marine and Fire Insurance Company, and John R. Dickinson, on the Application of William L. Church, Clerk.

1. Depositary—*of court funds—his relation to the court, and his liability.* When a court makes a particular person a depositary of its funds, and such person, with knowledge of such order, accepts the deposit, he becomes *pro hac vice* an officer of the court, and if, upon the order of the court, he fails to refund the money without showing some valid reason, he is guilty of a contempt.

The same rule is applicable to a corporation having court funds.

2. Same—*in case of an assignment by the depositary.* In such case, if the depositary becomes insolvent, with court moneys in his hands, and makes an assignment for the benefit of his common creditors, his assignee is not a *quasi* officer of the court, and can not be punished for disobedience of such order, provided, such deposit was a general one, merely creating the relation of debtor and creditor.

3. The relation of such assignee to the court, is not different from that which he occupies to the other creditors.

4. When such deposit is made a specific bailment, for safe keeping, the same money to be returned, and there is no change of ownership, the court may follow its specific property even in the hands of an assignee.

Appeal from the Circuit Court of Cook County; the Hon. E. S. Williams, Judge, presiding.

The opinion states the case.

Mr. Edward Martin and Mr. P. L. Sherman, for appellants.

Mr. C. Beckwith and Mr. F. H. Kales, for appellee.

Mr. Justice Lawrence delivered the opinion of the Court:

In July, 1862, the Circuit Court of Cook county, made an order appointing the Western Marine and Fire Insurance

Company a place of deposit for moneys paid into court in pending suits, and directing its clerk, William L. Church, to open an account, in his own name as clerk, with said banking house, and deposit moneys to the credit of such account, and check them out on the order of the court. He accordingly opened the account, informing the cashier, as the deputy clerk testifies, of the nature of the order of the court and the character of the account. The cashier, however, denies that he had any information in regard to the order of the court until after the commencement of these proceedings. The President of the bank also denies all knowledge of the order until after the bank made an assignment.

In October, 1864, the bank made an assignment by deed of all its property to Dickinson, in trust for its creditors. At the date of the failure of the bank and its assignment, there was a balance to the credit of Church's account, the exact amount of which is one of the matters in dispute, but as to which, in the view we take of the case, it is not necessary for us to express an opinion. Shortly after this assignment, Church obtained from the Circuit Court a rule *nisi*, which was afterwards made absolute, requiring Dickinson to pay into court, out of any money which had come into his hands as assignee, the sum of $3,798 65, the balance claimed by Church to be due. From this order Dickinson has prosecuted an appeal.

When a court makes an order appointing a particular person a depositary of the court funds, and such person, knowing of such order, accepts the deposit, he unquestionably becomes *pro hac vice*, an officer of the court. The court may order him to refund the money, and if he fails to do so, without showing some valid reason, may proceed against him as for a contempt. The same rule would apply to a corporation, and if its officers, having control of its funds, and having the means of payment, belonging to the corporation, in their hands, should refuse to pay, they too might be proceeded against as for a contempt. It is not, however, because the debt due from the depositary to the court, is a debt of any more sacred or binding character

than any other debt the depositary may owe, where, at least, the deposit has not been of a special character in the nature of a bailment, but simply a general deposit, the funds to be mixed and confounded by the depositary with his own. This summary remedy, we remark is not furnished by the law, because of any special character attaching to the debt, but because the debtor sustains such a personal relation to the court that the court can apply to him a summary remedy—because, in short, he is a *quasi* officer of the court, subject to its summary orders in regard to his official proceedings, and liable to be punished for disobedience, unless he can purge himself from the contempt.

But let us go a step further. Suppose this depositary becomes insolvent, with the court moneys in his hands, which he has received as a general deposit, and makes an assignment for the benefit of his common creditors, can his assignee be considered as a *quasi* officer of the court, and be proceeded against in a summary manner, and punished for contempt because he disobeys a summary order? If the court deposit is made as a specific bailment for safe keeping, the same money deposited to be returned, and there is no change of ownership, then, doubtless, the court might follow its specific property wherever it could find it, and reclaim it even from an assignee. But we are speaking of a general deposit, which creates merely the ordinary relation of debtor and creditor, the money deposited having changed ownership, and becoming, until called for, the property of the depositary, and used by him as his own funds, such being the understanding when the deposit is made. Can an assignee of such a depositary be proceeded against in this manner? We are unable to see upon what grounds. He sustains no personal relation to the court. He is, in no sense, an officer of the court. He has no property belonging to the court. He holds in his hands certain property in trust for the payment of certain debts, and among them a debt due to the court, but that debt, so far as he is concerned, stands upon the same footing with all other debts. The

depositary in the case at bar, might, with great propriety, have made it a preferred debt in the deed of assignment, but he has not done so. The assignment is in trust for the payment of debts generally. How, then, can the trustee assume the right to pay a particular debt to the exclusion of the others? He has no property in his hands with which to pay, by which we mean, no property appropriated to this particular debt. It all belongs in equity to the creditors at large, and upon equal terms. If the court orders him to pay the court debt, irrespective of the others, and he obeys, what protection has he against a bill in chancery filed against him by the other creditors for a breach of his trust. The order of the court will not protect him, for as the creditors are not parties to the summary proceeding, they are not concluded by the orders made in it. The assignee having no right, voluntarily, to pay one debt in preference to another, the court should not seek to compel him to do so, by threatening him with the penalties of contempt.

It is not clear that even the officers of the bank knew that they were receiving the money under an order of the court. But admitting that they did, it is clear that it was simply received as a general deposit, and not as a bailment. The money deposited went into the general funds of the bank. The court was a general creditor of the bank, the character of its debt not being different from that of other creditors, but with a summary remedy against the officers of the bank in case of a contumacious refusal to pay upon the order of the court. But when the bank assigned to Dickinson, he took the property of the bank merely upon such trusts as were declared in the deed of assignment. He can administer the property only in conformity with those trusts. But the court, in the assignment, is placed upon a common level with all other creditors. Dickinson has no means in his hands with which to pay the debt due the court, except so far as the court is entitled to a dividend in common with other creditors. He is not, himself, the debtor of the court, he has no property in his hands belonging specifically to the court, and occupies no relation to

the court different from that which he occupies to the other creditors of the bank. We see, therefore, no ground upon which the court can claim privileges denied to other creditors, or pronounce Dickinson in contempt because he does not choose to disregard the trusts for which this property was placed under his control. We must discharge the rule, at the costs of Church.

*Rule discharged.*