LUCIUS B. OTIS

*v.*

JACOB GROSS.

*Filed at Ottawa November 20, 1880.*

1. BANK—*deposit under order of court—when not entitled to preference.*
Where the clerk of a court, under an order of the court, making a bank a
depositary of court funds, and of funds of its officers, makes a deposit of funds
belonging to the court in such bank, and the bank afterwards becomes insol-
vent, and the deposit was not a special one, or a mere naked bailment, and there
is no means of identifying the money deposited, even if the assets of the
bank are in the hands of a receiver, it is error to require the receiver to
pay such deposit in full, and the clerk must share *pro rata* with other
depositors and creditors of the bank.

2. SAME—*whether deposit is general or special.* Where moneys deposited in
a commercial savings bank were not kept separate from the general funds of
the bank, or distinguished therefrom, and the entries of the same upon the
bank books, and upon the deposit book of the officer making the deposit, were
the same as with all other depositors, except that no interest was to be paid
thereon, it was *held*, that the deposit, though made under a general order of
the court, was not a special one, or a mere bailment, and that the money so
deposited became that of the bank, which was liable for its repayment the
same as to any other depositor or creditor.

3. RECEIVER—*power of court to direct payment out of funds in his hands.*
Where the court places the assets of an insolvent bank in the hands of a
receiver, it is for the benefit of all the creditors of the corporation, to be
administered, distributed and paid according to the equitable claims of all
such creditors, and such act can not affect or change in the slightest degree
the rights of a single creditor, and the fact that the court has acquired posses-
sion of the assets and funds, confers no legal right to retain its own gen-
eral deposits in full, where the moneys deposited under its direction with
the bank can not be identified.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Circuit Court of
Cook county; the Hon. WILLIAM H. BARNUM, Judge, pre-
siding.

Mr. J. L. HIGH, for the appellant:

1.    Money deposited with a bank on general deposit
becomes the funds of the bank, undistinguishable from its

general funds, and the relation between the bank and its depositor is merely that of debtor and creditor. Morse on Banking, 30, and cases cited; *In re Mutual Building Fund Society,* 15 Bank. Reg. 44.

2. Trust funds deposited with a bank, or delivered upon bailment, which are mingled with the general funds of the bank, or other bailee, with no ear mark to distinguish them, can not be recovered *in specie* upon the insolvency of the bank or bailee. The depositor has no specific remedy against the bankrupt estate, but must come in *pari passu* with other creditors. Hill on Trustees, 531; *Bank of Commerce* v. *Russell,* 2 Dill. 215; *In re Janeway,* 4 Bank. Reg. 100; *In re Coan & Ten Broek Carriage Manufacturing Co.* 12 Bank. Reg. 203; *In re Mutual Building Fund Society,* 15 Bank. Reg. 44.

3. A deposit of court funds in a bank which is made the depositary of the court, the fund going into the general funds of the bank, is only a general deposit and not a bailment. The court becomes a general creditor of the bank, the character of its debt not being different from that of other creditors, but with a summary remedy against the officers of the bank upon their refusal to pay. Upon the failure of the bank and an assignment of its effects, the court can not recover its deposit *in specie* of the assignee, and is only entitled to a dividend *pari passu* with other creditors. *In re Western Marine and Fire Ins. Co.* 38 Ill. 289.

4. The receiver is not the depositary or custodian of the court funds, nor the successor of the bank as such depositary or custodian. He is a receiver in equity, appointed for the benefit of all the creditors, deriving his title from the order of his appointment, his functions being defined by that order and by the practice of courts of equity. Holding the fund in trust for all creditors, payment in full of one creditor at the expense of others would be a fraud which can not be tolerated in equity.

Messrs. GARDNER & CHANDLER, for the appellee:

1.   A receiver is defined to be an indifferent person between the parties, appointed by the court on behalf of all parties, only to receive the thing or property in litigation pending the suit.   *Baker et al.* v. *Backus, Admr.* 32 Ill. 95; *Coates* v. *Cunningham,* 80 id. 467.

2.   The appointment of a receiver gives no priority or superiority of right to the parties upon whose application it was made.   It has no effect to change the title or create any lien upon the property.   He is an officer of the court, and acts under its direction and control in disposing of the funds coming to his hands.   *Ellis* v. *Boston, etc. Railroad Co.* 107 Mass. 1.

3.   As a general rule, he is responsible for his official acts only to the court appointing him, and can only be called to account by that court.   *Conkling* v. *Butler,* 4 Bissell, 22; *Henry* v. *Kaufman,* 24 Md. 1.

He can not be sued in his official capacity, except by leave of the court appointing him.   High on Receivers, sec. 254; *Wiswall* v. *Sampson,* 14 How. 65; *Thompson* v. *Scott,* 4 Dill. 508.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that the circuit court of Cook county, by an order entered on its records, designated the State Savings Institution of Chicago as the depositary of moneys in the hands of the officers of the court and under its control.   By resolution the bank accepted the trust.   Subsequently, the institution failed, and its officers fled to avoid criminal prosecution; and the institution being insolvent to the amount of $1,800,000 above its assets, a receiver was appointed to take charge of the affairs and assets of the bank.

The clerk of the circuit court, Gross, opened an account with the bank, and made deposits of the funds under the control of the court, as occasion required, and funds were

drawn out when needed to pay litigants and as directed by the court. When the bank failed, there was deposited and not checked out of the bank the sum of $2597.43, deposited by the clerk of the court.

A dividend of ten per cent on the debts against the bank had been declared, which would probably nearly exhaust the assets, which the clerk refused to receive, but demanded the full amount, insisting the deposit was a special fund, and that it was a special deposit. It is admitted that the corporation was authorized to do, and did a commercial and savings deposit business; that when this fund was deposited in the bank, it was made, entered, numbered and kept on the books of the institution in like manner as all other savings deposits, except as to payment of interest; that a deposit book was given to, and accepted by the clerk, in which these deposits were entered; that it was the same in character and form as the deposit books given to other depositors, and the funds deposited by the clerk were entered in his book in like manner as in all other cases, and the money thus received was mingled with the general funds received and held by the institution, and was in no manner ever kept separate or apart from the general funds or distinguished therefrom. The order of the court did not require, nor did the resolution of the directors agree that it should be kept separate.

The clerk filed a petition against the receiver to have this declared a trust fund, and to have the full amount of the deposit paid to him. And on the facts here stated the circuit court made an order that the receiver should so pay it. He thereupon perfected an appeal to the Appellate Court for the First District, where, on a hearing, the order of the circuit court was affirmed, and he brings the record to this court and urges a reversal.

From the facts in this case, it is manifest that this was not a special deposit or a mere bailment. The money, when deposited, was commingled with the general funds of the bank, as was that of other depositors. It was not agreed to or directed

to be kept separate as a fund.   It then, as others, became the funds of the bank for the paying of the amount for which it became indebted, as did that of other depositors.   Had it been placed in a separate package and so deposited, and never mingled with the funds of the bank, or had it been so kept that its indentity could be established, it would, no doubt, have been different.

In such a case, the title and property in the money would not have changed or vested in the bank, and it would have been a simple bailment, presenting no difficulty.   It then would have been plain that the court could, and it would have been its simple duty to require the receiver to pay it to the clerk, but as it was mingled with and became a part of the common fund, and the bank a debtor therefor, a different question is presented.   Nor do we think that the fact there was no agreement to pay interest on the deposit, of sufficient importance to change the character of the deposit to a bailment.   That was a mere incident to the transaction not sufficient to control its nature.

In the case of *In re Western Mar. and Fire Ins. Co.* 38 Ill. 289, it was held that when a court, by order, appoints a particular person a depositary of the funds under the control of the court, and such person, knowing of the order, accepts the deposit, he becomes, *pro hac vice,* an officer of the court. And the court may make an order for him to pay the money, and if he fails to do so without showing some sufficient reason, he may be proceeded against as for a contempt, and the same rule would apply to a corporation and its officers, having the means of payment in their hands belonging to the corporation, and if they should refuse to pay, they might be proceeded against for a contempt.

But it was there also said that if the depositary becomes insolvent, and should make an assignment for the benefit of creditors, the assignee is not a *quasi* officer of the court and could not be proceeded against for contempt.

It was also held, in that case, that such a deposit was not a bailment, but became a debt due the court, and that the claim of the court for its deposit was of no higher grade or superior equity than claims of other creditors, and was required to take a *pro rata* dividend.

That case was like this in all of its facts, except that there the officers of the bank had no knowledge that the court had made the company the depositary, and there the corporation made an assignment for the benefit of creditors, whilst in this case, the court appointed a receiver to administer the assets for the benefit of creditors. This diversity in the facts in the two cases, we regard as being unimportant and as having no controling effect on the decision of this case. The only effect of the notice to the officers that the bank was designated as a depositary, was to render them liable to be punished for a contempt. The receiver, like the assignee, took the assets for the benefit of the creditors of the bank.

But it is said the receiver is an officer of the court, and by his appointment he became the custodian of the entire funds, to hold and pay out under the direction of the court; that his possession became and is that of the court, and he can only administer the fund strictly under the direction of the court, and, having possession of the fund, the court has power to order its payment by the receiver, and on his failure he may be proceeded against as might the officers of the bank. It is true, if he was so ordered and refused to obey, he might be punished as for a contempt in disobeying the order. He would not be thus punished for the default of the bank officers, but for his own fault.

But the controling question in the case is, whether, under the circumstances of this case, the court had the legal right to make the order. When the court seized the fund, it did so for the benefit of the creditors of the bank. The court, by its receiver, took possession of the property, and did so to be administered, paid and distributed according to the equitable claims of all the creditors of the bank. By appoint-

ing the receiver and placing the fund in his hands, none, the slightest, change occurred in the rights of a single creditor, not even the court, as a depositor.

It became the duty of the court to distribute the fund according to the rights of all creditors as they then existed. If it was then right, according to equitable principles, to order that deposit to be paid in full and others but a per cent on their debts and deposits, the court should have so ordered, but if such was not the legal duty, the mere fact that the court has acquired the possession of the fund confers no legal right to retain its deposit in full from the fund.

The deposit, when made, passed into and became a part of the common fund of the bank, as it was no doubt intended, and the clerk thereby acquired a legal and not an equitable claim against the bank. His claim became the same and no more than that of the other depositors—purely legal. It became an equitable demand for the first time when the court seized the fund for distribution among the creditors. And as all of the claims were legal and on the same footing, and, so far as shown, no one having a superior natural equity, the court was required to adopt the rule that equality is equity, and distribute the funds amongst all *pro rata*. Each person, on becoming a creditor by deposit, loan, or otherwise, had the legal right to full payment of his entire debt, but, the fund being wholly insufficient for the purpose, equity requires each should receive his proportion of his debt.

The mere fact that this was a fund in court does not give the claim of the court a preference over other just claims. It may be a misfortune and a great hardship that the money was deposited in this institution, but it is equally so that the other creditors were so unfortunate as to repose confidence in dishonest or incompetent men, and deposit their means with them.

As this was not made a special deposit, or a mere naked bailment, and there being no means of identifying the money deposited, even if it is in the hands of the receiver, it must

share the fate of the claims of other depositors, and the clerk must share *pro rata* with other depositors.   The order of the circuit court was erroneous, and the judgment of the Appellate Court must be reversed and the cause remanded.

*Decree reversed.*