SOUTHERN DEVELOPMENT Co. *v.* HOUSTON & T. C. RY. Co. and others.[1]

*(Circuit Court, E. D. Texas.* March 15, 1886.)

1. BANKS AND BANKING—DEPOSITS—COURT FUNDS—MONEYS PAID INTO COURT.
  Where, by the orders appointing them, receivers were authorized and directed to carry on and operate railways, and the property thereof, and such carrying on and operating contemplated and required the handling, receiving, and paying out of moneys, the payment and collection of bills, and the transaction of such financial business as would require the medium and accommodation of banks, *held,* that in the transaction of this business, such moneys so deposited in such banks were not deposited as special funds, to be drawn out on or-

[1]Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

der of the court, but were deposited generally, to the credit of the receivers, and to be handled and used by the bank like deposits of its other patrons in a banking, loan, and deposit business.[1]

2. SAME—CONTEMPT OF OFFICER OF COURT.

If it be conceded that a bank; designated by the court as a bank of deposit, etc., of funds coming into the hands of receivers appointed by the court, by designation of the court, and by acceptance, become an officer of the court, and that the funds deposited therein were court funds, and that therefore the bank is liable for misconduct in misappropriating such funds, as in case of contempt, there is neither reason nor authority for considering that each servant or agent of the bank also become *pro hac vice* an officer of the court, and therefore amenable to the court, as in case of contempt, for misconduct in dealing with bank funds. *In re Western Marine & Fire Ins. Co.*, 38 Ill. 289, distinguished.

On Rule for Contempt against William R. Baker and others.

*E. H. Farrar*, for receivers.

*I. C. Hutcheson*, and *George Goldthwaite*, for respondents.

PARDEE, J.   The petition of the joint receivers in this case sets forth that the court in this case made an order naming and constituting certain banks in the city of Houston depositaries, and requiring petitioners to deposit in said banks, for safe-keeping, the moneys which might come to their hands as receivers of the defendant corporation, the same to be kept solely for safe-keeping, and to be subject to the order of petitioners; that the City Bank of Houston, a banking corporation under the laws of Texas, was one of the banks constituted a depository aforesaid; that said bank accepted the trust, and received deposits from petitioners almost daily from said appointment up to and inclusive of the nineteenth of December, 1885; that William R. Baker is, and has been for months past, the president of said bank; that Benjamin F. Weems is, and has been for years, cashier of said bank, and a director thereof; that S. K. McIlhenny and Robert Brewster are, and have been for several years, directors of said bank; that while occupying said positions of trust in connection with said bank said Baker, Weems, Brewster, and McIlhenny did fraudulently combine and conspire together, and with other members of the board of directors, to obtain possession of all such deposits as might be made by the receivers, for their own use and for the use of the bank and its creditors, and to oust the jurisdiction of this court, and to put the said receivers' funds beyond the control of the court; that the appointment of said Weems as receiver of said bank was procured by the respondents to be made by the judge of the Eleventh district court of the state of Texas; and that the said Weems, acting under color of such appointment, has taken possession of the greater part of the assets of said bank, including the funds belonging to said receivers.   They further aver, in support of these charges, in substance, that the said bank was, and had been for some months previous to its failure, in an involved and insolvent condition, to the

[1] See note at end of case.

knowledge of its officers, particularly to the knowledge of the respondents; and that thereupon, the said bank being the owner of large quantities of real estate, which formed the basis of its credit, the said respondents Baker and Weems, for said bank, executed, about the twentieth day of November, 1885, deeds of trust for the use of respondents Baker, Brewster, and McIlhenny, conveying nearly all the valuable real estate of said bank to secure alleged debts to said respondents; that said deeds of trust were kept secret, and not recorded until the seventeenth and nineteenth days of December, just prior to filing petition in the state court for the appointment of a receiver; that at the time said deeds were executed said Baker and Weems well knew that the said bank was absolutely insolvent; that said deeds were executed in anticipation of the declaration of such insolvency, and with a view to give a fraudulent preference to the officials of the said bank; and that they were kept concealed to deceive petitioners and other depositors; and that petitioners, as receivers of this court were deceived, and induced thereby to make large deposits in said bank; and that said receivers did make such large deposits; and that said bank and its officials received deposits from them after the contemplated closing, and did receive the sum of about $14,644.27 after the petition for the appointment of a receiver had been prepared and was held for filing. The receivers alleging demand and refusal of the respondents, pray for process to hold them in contempt of this court until they shall pay over to the receivers the sums so obtained as aforesaid.

The respondents have united in a demurrer, raising the question as to whether they were officials of this court, or had disobeyed or resisted any lawful order of the court; and have separately answered to the same purport as the demurrer; and, further, denying notice of the bank's designation as a depository by the court; denying conspiracy or fraud; and averring, in substance, that while they knew of the involved condition of the bank they believed it solvent until the time of closing the doors; that the deeds of trust were made to secure valid indebtedness; and that in all things they acted as they believed for the best interest of the bank and its creditors; that the deposits by the receivers of the Houston & Central Railway were received in the regular course of business of the bank, and treated the same as deposits by other patrons of the bank; and they deny any intention to disobey or evade any orders of this court; and they aver many other things not necessary to recapitulate, as tending to justify their conduct in managing the affairs of said bank.

From the answers of the respondents, and the evidence produced on the hearing, the facts of the case appear to be, substantially, as follows:

In the above-entitled suit, pending on the equity docket of this court, an order was entered on the twentieth day of February, 1885, appointing Benjamin G. Clarke and Charles Dillingham joint re-

ceivers of all the property and effects of the Houston & Texas Central Railway Company, with power to manage, control, and exercise all the franchises of the same, and to run, operate, and manage the railways of the said company; that thereafter the said receivers qualified and entered upon the discharge of their duties, and entered into full possession and control of the said property and effects, and since have operated and managed as such receivers the railways of said company; that in the operation and management of said railways it became and was necessary that said receivers should make use of banks and depositories on the line of the railway, and at Houston, where the general offices were located, to deposit, temporarily, the moneys received by them as revenues of said railways, and necessary for them to pay out in the ordinary transaction of their business; and that accordingly said receivers, on March 5, 1885, petitioned the court for an order designating two banks or bankers in Houston as depositories of their funds, which petition was referred to the special master to investigate and report; and, accordingly, on the thirteenth of April, 1885, the special master reported that after an examination of the facts, and after consultation with the receivers, he advised that three banks in the city of Houston, to-wit, the City Bank of Houston, the First National Bank, and T. W. House, banker, be designated by the court as depositories of the moneys, funds, and securities of the receivers, which report was confirmed by order of court April 18, 1885; that prior to the said report and order the receivers, on the seventh of March, had opened an account with the City Bank of Houston, the cashier (respondent Weems) being then notified that the court had been applied to, to designate certain banks in which the receivers should keep accounts, from which time until the nineteenth of December the said receivers made various deposits of funds derived from the property in their hands, and drew checks against their deposits, which were paid; that the accounts opened by said City Bank of Houston were with Benjamin G. Clarke and Charles Dillingham, joint receivers of the Houston & Texas Central Railway, one account being a general account, relating to the general revenues derived from operating the railway, and another being a special account, relating to the proceeds of land sales collected by the receivers, under a consent decree in the case, made on the seventh of May, 1885, and another account for collections made by said bank for account of the receivers; that on the nineteenth of December the City Bank of Houston had on deposit, to the credit of said receivers, funds derived from general revenues of the railway, the sum of $27,742; funds derived from land sales, the sum of $4,466.72; and from collections, the sum of $6,392.94; making a total of $38,601.66; the sum of $1,234 of the amount of the general account was received by the said bank and its officers on the eighteenth day of December, from shipments made by the agents of the receivers through the express companies, and the

sum of $5,284.33 of the amount of the general account was received in like manner on the nineteenth of December; that on the nineteenth of December the officials of said bank refused to pay the checks drawn by the said receivers against the funds in said bank to their credit, and closed the doors of said bank, and in pursuance of arrangements made on the eighteenth of December, on a bill brought by the president of said bank, (respondent Baker,) on his own behalf, and on behalf of the said bank and the Houston Insurance Company, against one Robert Cohen and one Robert Brewster, in the district court of Harris county, Texas, all the assets, moneys, and property of said bank were turned over to the possession of the said district court for liquidation; and in said district court the cashier of the bank (respondent Weems) was appointed receiver, and as such put in possession of all the property and moneys of said bank, including the sums in said bank belonging to said receivers of the Houston & Texas Central Railway, and deposited by them, particularly the sums deposited by them on the eighteenth and nineteenth of December.

Thereafter the receivers made demand on the officials of said bank — to-wit, W. R. Baker, president; B. F. Weems, cashier; Robert Brewster, director; and S. K. McIlhenny, director—for the return and payment of the said sums belonging to the said receivers as aforesaid, but the same was refused.

It further appears that the charges of the receivers with regard to the execution of two deeds of trust to secure the president and directors in preference to the general creditors of the bank, and the withholding of said deeds from record until just before the bank was closed, are substantially correct, although it appears that the indebtedness secured to President Baker was mostly of long standing, and the other indebtedness secured was for accommodation paper given by the directors to aid the bank in keeping its business going, by what President Baker in his petition to the state court termed "kite flying." There is no doubt that the bank has been long insolvent, and would long since have closed its doors but for the credit it received on account of its large holding of real estate; that the deeds of trust, and the preferences therein given, were bound to be fatal to any further credit, as soon as publicly known; and it seems conclusive that the respondents knew of his condition, and of the certainty of failure,—certainly from the time they protected themselves at the expense of the people who had trusted in their honesty and financial management.

On the hearing, the argument took a wide range; but the real inquiry in this proceeding may well be restricted to the simple question of the relations of the respondents to the court. Counsel for the receivers contend that the effect of the order of court designating the bank as one of the depositories of the receivers, and the acceptance by the bank of the receivers' deposits, was to make the bank, and its

officers, officers of the court, and therefore directly responsible to the court for misappropriation of the moneys deposited by the receivers under the order of court.

The adjudged cases on this point brought to the attention of the court are unsatisfactory. The statement in Rapalje on Contempts (section 15) that "a private corporation, made the depository of the funds of the court, is an officer of the court, within the power of the court to punish by contempt process for misconduct, is supported by a *dictum* of the supreme court of Illinois in the case of *In re Western Marine & Fire Ins. Co.*, 38 Ill. 289, in which case it is said:

"When a court makes an order appointing a particular person a depositary of the court funds, and such person, knowing of such order, accepts the deposit, he unquestionably becomes *pro hac vice* an officer of the court. The court may order him to refund the money, and if he fails to do so, *without showing some valid reason*, may proceed against him as for a contempt. The same rule would apply to a corporation, and if its officers, *having control of its funds, and having the means of payment belonging to the corporation in their hands,* should refuse to pay, they too might be proceeded against as for a contempt."

It will be noticed by the foregoing that officials of a corporation delinquent as a depository are to be held as in case of contempt, when they have control of its funds, and have the means of payment belonging to the corporation in their hands.

Counsel for receivers have also cited *Cartwright's Case*, 114 Mass. 230, which was a case where a receiver had appropriated the funds confided to him to his own use, and where there was no doubt about the official relation.

In the present case I think that it is somewhat doubtful whether the funds, deposited by the complaining receivers with the City Bank of Houston under the aforesaid order of court, were strictly court funds, or could be considered as moneys paid into court. By the orders appointing them, the complainants, as joint receivers, were authorized and directed to carry on and operate the railways and property of the Houston & Texas Central Railway Company; and such carrying on and operating contemplated and required the handling, receiving, and paying out of money, the payment and collection of bills, and the transaction of such financial business as would require the medium of and accommodation of banks. In the transaction of this business, moneys were not deposited as special funds to be drawn out on order of the court, but were deposited, generally, to the credit of the receivers, and to be handled and used by the bank, like the deposits of its other patrons, in a banking, loan, and discount business. And it may be further noticed that the respondents have not the possession of the funds of the bank, nor means in their hands belonging to the bank, the possession of respondent Weems, as receiver, being that of the district court of Harris county. So that if we take the law to be as broad as declared by the supreme court of Illinois, in the *Western Marine & Fire Ins. Case*, it is not broad enough

to meet the necessities of this case; for if it is conceded that the City Bank of Houston, by designation of the court and by acceptance, became an officer of the court, and that the funds deposited therein were court funds, and that therefore the bank is liable for misconduct in misappropriating such funds, as in case of contempt, there is neither reason nor authority for considering that each servant or agent of the bank also became *pro hac vice* an officer of the court, and therefore amenable to the court, as in case of contempt, for misconduct in dealing with the *bank* funds.

The conduct of the respondents, as officials of the Houston City Bank, and as trustees of the property and funds of the said bank, in securing themselves at the expense of the creditors and patrons of the bank with deeds of trust on the property which really gave credit to the bank, and in holding the bank out as solvent so as to draw in confiding depositors to furnish the means for the bank to continue "kite flying," was reprehensible; and no doubt, when proved in a proper case, will fix the personal liability of these respondents for all the losses resulting from their faithless management of the said bank; and the conduct of the respondents in taking the moneys of the receivers of the Houston & Texas Central Railway Company after the papers were made out to throw the bank in liquidation, and in turning the said moneys into the assets of an insolvent bank, (already destituted by them, to save themselves,) was still more reprehensible.

This conduct, although reprehensible, and not at all in keeping with the good character of respondents as attempted to be shown in the evidence of this case, I am not prepared to hold can be treated as in contempt of this court.

The rule for contempt herein is discharged; but an order is laid upon the receivers of the Houston & Texas Central Railway Company to institute such legal proceedings as may be necessary to make said respondents individually and collectively liable for all the funds wrongfully obtained from and withheld from said receivers. The costs of these proceedings for contempt will be taxed and paid in the main suit.

NOTE.

Cash deposited with a bank as a general deposit ceases to be the property of the depositor, and becomes the property of the bank, creating at once the relationship of debtor and creditor. Balbach v. Frelinghuysen, 15 Fed. Rep. 675.

And so, where one leaves money with another for safe-keeping, with the understanding, not that the identical money shall be returned to him, but a like sum, it is not a bailment or special deposit, but a general deposit in the nature of a loan. Shoemaker v. Hinze, (Wis.) 10 N. W. Rep. 86.

Upon a special deposit a bank is merely a bailee, and is bound according to the terms of the special deposit; but on a general deposit by a clerk of the court, without special agreement, the money becomes the property of the bank, and the depositor has no longer any claim on that money; his claim is on the bank for a like amount of money. McLain v. Wallace, (Ind.) 5 N. E. Rep. 911.