No. 20,253.

LUCY J. PHILLIPS, as Clerk, etc., *Appellee,* v. THE YATES CENTER NATIONAL BANK, and A. H. GILLIS, as Receiver, etc., *Appellants.*

SYLLABUS BY THE COURT.

1. PUBLIC FUNDS—*Placed in Ordinary Deposit Account in Bank—No "Special Deposit"—No Priority of Payment.* Where deposits in a bank are made from time to time to the credit of the depositor as a public officer, entry thereof being made in a pass book, and checks are drawn and paid in the ordinary course of business, monthly statements being rendered, testimony that it was the purpose of the depositor that the funds should be kept separate and should be always there so that they could be checked out at any time affords no basis for regarding the amount on hand as a special deposit.

2. SAME. The claim of an officer for funds deposited by him in a bank which has become insolvent is entitled to no priority of payment merely because of their public character.

3. SAME—*Deposited in Violation of Law—Trust Fund.* Where public funds are deposited in violation of law in a bank which has knowledge of the facts, the title does not pass, and a trust results which in case of insolvency may be enforceable against the receiver.

4. SAME—*Deposited in Bank Lawfully—Title Passes—No Trust.* In the absence of a statute either expressly allowing or expressly forbidding it, the act of the clerk of the district court in placing the funds in his official custody on general deposit in a bank, to his credit as such officer, is not illegal, and therefore the title passes and no trust results.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed June 10, 1916. Reversed.

*Altes H. Campbell,* and *G. R. Gard,* both of Iola, for the appellants.

*G. H. Lamb, W. E. Hogueland,* and *G. R. Stephenson,* all of Yates Center, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Yates Center National Bank became insolvent. At the time it closed its doors Lucy J. Phillips, the clerk of the district court of Woodson county, had on deposit to her credit as such officer the sum of $2703.76. She brought an action against the receiver for this amount, on the theory that it constituted a trust fund. She recovered a judgment, and the defendant appeals.

1. The contention is made in behalf of the plaintiff that she placed the funds which she held as clerk in the bank as a special deposit. It was shown that for a time she deposited money received in her official capacity, together with that belonging to herself, in her name individually, without anything to indicate its character. Within a few months, however, she changed this practice and caused the funds in her official custody to be transferred to her account as clerk, thereafter making deposits and checks by that designation. A running account was kept and deposits were made and checks drawn in the usual course of business for a period of over four years, an ordinary pass book being used and monthly statements being rendered. She testified concerning the transfer: "I

Phillips v. Bank.

told Mr. Ricker [the president of the bank] the most of the money on deposit was held by me as clerk of the court, and wanted it arranged so that it would show that it was office money and not a personal account, and he suggested that I deposit it in this way, so that it would show kept separate. . . . Told him I wanted to change it and put the clerk's money to a deposit so it would be separate." The question was asked: "But your idea was that you would separate your personal funds from those others; that is right?" She answered: "Yes, well, I wanted my personal funds separate from the others, and I also wanted it so it would be there and could be checked out at any time." It is clear that the deposit was general. To have made it special the arrangement must have contemplated the safe-keeping and return of the very money left with the bank. The manner in which the business was conducted, the use of the pass book, the issuance and payment of checks, the balancing of the account, all indicate the ordinary relations between banker and depositor. (*The State v. Dickerson,* 71 Kan. 769, 81 Pac. 497; 3 R. C. L. 518, 519, 522.) The purpose of the plaintiff that the money should "be there," so that it could be checked out at any time, is one which actuates most depositors, and does not imply an understanding that the bank was to keep and return the identical bills and coins left with it.

2. The claim of an officer for funds deposited by him in a bank which has thereafter become insolvent is entitled to no priority of payment merely because of their public character. (3 R. C. L. 644; Note, 8 Ann. Cas. 116; 5 Cyc. 514.) And with respect to a national bank probably no state law could create a preference on that ground. (*Davis v. Elmira Savings Bank,* 161 U. S. 275.)

3. But where public funds are deposited in violation of law in a bank which has knowledge of the facts, the title does not pass, and a trust *ex maleficio* results which in case of insolvency may be enforced against the receiver or other custodian, so far, at least, as they have come into his hands, and in some jurisdictions to the extent by which the assets under his control have been thereby increased. (3 R. C. L. 555; Notes, 5 L. R. A., n. s., 886; 16 L. R. A., n. s., 918.)

4. Therefore the question to be determined is whether the clerk of the district court may lawfully place on general deposit, to his credit as such officer, the funds that come into his hands in that capacity. There is no statute which expressly allows or expressly forbids such course. His bond is conditioned for the payment to the proper person of all moneys received in his official capacity, and the faithful discharge of his duties. (Gen. Stat. 1909, § 2245.) His duties are described as those required by law or the rules and practice of the courts, including the safe-keeping of papers and awards. (Gen. Stat. 1909, § 2246.) A public officer or other custodian who holds money not his own, merely for safe-keeping until occasion shall arise for lawfully paying it out, has, of course, no right to use it in his own business or to permit its use by others. This is not merely because of the risk of loss, for all risk can not be avoided, and such a disposition in a particular case might be the safest course that could be adopted to prevent loss. But to part with the title and right of possession amounts to a conversion, and is under the condemnation of the law whether a loss results or not. The placing of funds on general deposit in a bank involves the consent to its using them in its business. If the transaction is taken out of the general rule which forbids a mere custodian to part with the title to the specific money entrusted to him, it is because the commercial world recognizes the putting of funds in a bank as the natural, usual and proper way of keeping and taking care of them, because of its obligation, enforced by governmental supervision, to have on hand at all times the cash to meet any call for a deposit, notwithstanding its relation to its depositors is technically that of a debtor to creditors.

In two Kansas cases the deposit of public funds by a treasurer (of a board of education and a city, respectively) has been treated as wrongful, but in each he was the manager and cashier of the bank, and the illegality of the transaction was not denied, the question in dispute being the extent to which the trust fund could be traced. (*Myers v. Board of Education,* 51 Kan. 87, 32 Pac. 658; *City of Larned v. Jordan,* 55 Kan. 124, 39 Pac. 1030.) It has also been held that the statute forbidding a county treasurer to permit any corporation or individual to use public money under his control prevents his lawfully de-

Phillips v. Bank.

positing it in a bank except by express statutory authority, this interpretation being affected by other legislation on the subject. (*The State v. Lawrence*, 80 Kan. 707, 103 Pac. 839.) The case just cited notes the difference of judicial opinion as to whether a general deposit in a bank is within a prohibition against the "loan" of public funds. (See, also, *Bank v. Lanier*, 78 U. S. 369; *Warren v. Nix*, 97 Ark. 374, 135 S. W. 896; *Ricks v. Broyles, receiver*, 78 Ga. 610, 3 S. E. 772; *The State v. Rubey*, 77 Mo. 610, 619; *State v. Bartley*, 39 Neb. 353, 58 N. W. 172; *State v. Hill*, 47 Neb. 456, 66 N. W. 541.) The supreme court of Iowa, in overruling an earlier decision which gave an affirmative answer to the question, said:

"The contention of appellee is that the law forbids such an officer [a school treasurer] from making a general deposit of public money, even though in his name as such, for the reason that thereby the title to the fund passes to the bank, and a technical conversion results, and that any contract having a tendency to induce an officer to swerve from the line of duty is, of necessity, inimical to the principles of sound public policy. Were this position correct, it would be a matter of profound regret, for nearly every county, city, and school district treasurer in the state has interpreted the law otherwise, and, according to this view, placed the funds of the public in jeopardy, and exposed himself to criminal prosecution. For, if depositing with a bank for safe keeping amounts to conversion, they would seem to be open to the charge of embezzlement, and might have difficulty in regaining the moneys from the depositories participating in the wrong by receiving the funds. Common prudence seems generally to have dictated the deposit of public moneys with solvent banking corporations for safe keeping. To require the officer to retain these in his personal custody would impose an exceedingly onerous burden, so out of keeping with what is deemed essential for the safety of the funds that one so proposing would experience difficulty in procuring sureties on his official bond. . . . If that decision [*Lowry v. Polk County*, 51 Iowa, 50, 49 N. W. 1049] is to be adhered to, then the hundreds of public officials of this state who have placed the moneys coming into their hands as such in the solvent banks of the state for safe keeping, in pursuance of a custom prevailing since the formation of this commonwealth, and in harmony with business usages of the commercial world, must be denounced as embezzlers. . . . We are not ready to so declare. Better that *Lowry v. Polk County*, in so far as holding the general deposit of money a loan, be overruled. It has been disregarded, because of business necessity and prudence, ever since announced. It is unsound in principle and contrary to authority." (*Hunt v. Hopley*, 120 Iowa, 695, 697, 702, 703, 95 N. W. 205.)

The supreme court of Wisconsin used this language in the course of an opinion determining that the state treasurer vio-

lated no law in making general deposits of public funds in banks, notwithstanding statutes requiring him to "pay over . . . the same moneys received and held by him by virtue of his office," and providing for examiners to "see that all the money appearing by the books . . . as belonging to the several funds is in the vaults of the treasury." (p. 504.)

"These deposits were made in the name of the treasurer, in his official capacity as such. No time of credit was given upon them, but they were payable whenever required by the treasurer, and they could only be drawn on the official draft or check of the treasurer. They were made in accordance with the usual and long-continued course of business in that department of the state government. . . . Under these circumstances it is reasonable to hold that the state treasurers were justified in transacting the business of their department as they did transact it, and as such business is almost invariably conducted in the commercial world, unless those methods were prohibited by some statute of the state." (*The State v. McFetridge and others,* 84 Wis. 473, 507, 508, 54 N. W. 1.)

It is held in this state that the bondsmen of a township treasurer are not exonerated by the fact that the money in his hands has been lost through the insolvency of a bank in which he had deposited it. (*Rose v. Douglass Township,* 52 Kan. 451, 34 Pac. 1046.) However, the fact that the law countenances a deposit in a bank as one of the methods that an officer may select for the care of money held in his official capacity does not imply that by pursuing that course he can relieve himself from liability for its loss. (Note, 36 L. R. A., n. s., 287.) In Wyoming it has been held that the title to moneys deposited by an officer in that capacity remains in the public. (*State v. Foster,* 5 Wyo. 199, 38 Pac. 926.)

In view of the manner in which business in this country is ordinarily conducted, the natural course to be pursued by the custodian of a fund to which additions are continually being made, and from which payments may be demanded at any time, is to place it on general deposit in a bank and check upon it as occasion arises. A special deposit is not necessarily any safer than a general one, and is usually regarded as more hazardous. To keep the money in his personal possession would often involve an unreasonable risk, and to place it in a safety deposit box, where that is available, involves too cumbersome a method of disbursement to be at all in keeping with modern customs. We do not think the legislature must be re-

Douglas County v. Leavenworth County.

garded as intending that all funds in the hands of custodians charged with their safe keeping must be withdrawn from circulation unless the statute expressly authorizes their deposit in a bank. We conclude that the clerk of the court acted lawfully in placing in the bank the money in her official charge, and therefore that the title passed and no trust resulted. This conclusion makes it unnecessary to consider any question as to the tracing of the funds into the hands of the receiver.

The judgment is reversed and the cause remanded with directions to render judgment for the defendant.