**WALLIS v. FIRST NAT. BANK OF BLUE-JACKET.**

No. 16586—Opinion Filed April 6, 1926.

1. **Trial — Directed Verdict Erroneous Where Evidence Conflicting.**

Where the cause is tried to a jury and the evidence is conflicting on the material issues of the case, it is error for the court to sustain a motion for an instructed verdict in favor of one of the parties.

2. **Banks and Banking—Ownership of Deposits — Presumption from Records and Dealings—Question for Jury on Conflicting Evidence.**

Where the pass book, or deposit slips, or

the bank record, shows or show that the deposits are made from time to time to the credit of the depositor, and checks are drawn and paid in the ordinary course of business, monthly statements being rendered, the presumption is that the funds of the account belong to the person in whose name the account is kept, but this presumption may be overcome by evidence to the contrary, and where the evidence is conflicting on this issue it is a question of fact for the jury to determine under proper instructions of the court.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Craig County; A. C. Brewster, Judge.

Action by Katherine Wallis against the First National Bank of Bluejacket, Okla. Judgment for defendant, and plaintiff appeals. Reversed.

Jess L. Ballard, for plaintiff in error.

James S. Davenport, for defendant in error.

Opinion by THREADGILL, C. The controversy in this case arose out of a bank deposit and refusal of the bank to honor four checks drawn against the deposit. On August 25, 1923, one Howard Wallis, husband of plaintiff in error here, and plaintiff in the trial court, ordered the First National Bank of Bluejacket, defendant in the court below, to transfer his account on the books of the bank to his wife, by placing before his name the designation "Mrs." The total amount of the deposit up to October 19, 1923, was $798. The checks drawn against this account, under the names of the husband and wife up to the time the case was tried, reduced the amount to $202.82. The immediate cause of the lawsuit was the refusal of the bank to honor four small checks, for $4.50, dated February 26th, $25 and $7, dated February 27th, and $27.80, dated March 3, 1924. The action was brought for actual damages under four counts for the respective amounts of the checks, and for additional damages under each count in the sum of $1,000. Plaintiff alleged that she was the owner of the account and had the right to check on it, and was damaged by the dishonor of the checks, and was further damaged in reputation and mental anguish and worry. Defendant filed its answer, and for defense denied that plaintiff had any account with the bank subject to her check and denied that she was damaged. The cause was tried to the court and a jury on December 13, 1924, and resulted in an instructed verdict in favor of

defendant, and plaintiff has appealed asking for a reversal and a new trial.

The principal question involved in the controversy is whether or not plaintiff had an account in defendant's bank that she had a right to check on at the time she gave the four checks that were dishonored. On this issue plaintiff's evidence is to the effect that her husband changed the account to her name and gave her the funds, with the understanding that he and she both could check on the account. She did not know of any agreement between her husband and the bank relative to the account. There was nothing of record to indicate that the account was restricted by agreement or otherwise. It was conceded that part of the money in the account was the proceeds of a sale of mortgaged property about which there was some dispute. There were other items of deposit besides the proceeds of the sale. Defendant's evidence is to the effect that Howard Wallis, plaintiff's husband, had a small account with the bank, and in August, 1923, at a time when he was threatened with a suit and garnishment, he transferred the account to his wife by having "Mrs." placed before his name on the books. Soon thereafter the bank answered, in a garnishment proceeding against said Howard Wallis and the bank, that said Wallis had no account in the bank. There were items of deposit in said account of $104.78, $187.45, and $128.16, making $402.89, the proceeds of the sale of the mortgaged property. The Bluejacket State Bank claimed an interest in the property and proceeds of the sale, and defendant, by its cashier, "clerked" the sale, and the president acted as auctioneer, and it was understood among the parties that the proceeds of the sale were to be kept in the defendant bank till the controversy between the Bluejacket State Bank and Howard Wallis was settled; that Howard Wallis agreed to this and directed defendant to keep the money in the account as transferred to Mrs. Howard Wallis, and not allow it checked on without his permission. It admitted that the cashier allowed Howard Wallis to check on the account for small sums, but always with the promise on his part to reimburse the account, which he had failed to do. Howard Wallis, as a witness on rebuttal, for plaintiff, denied that he agreed for the money from the sale to be kept pending settlement with the Bluejacket State Bank. He said: "Well, the understanding was just—that he would turn this over to her so as we could use this money without being tied up there with the State Bank." He said the Bluejacket State Bank had brought a suit against him, but

he was resisting, the suit. In answer to the questions as to what the understanding was as to drawing checks on the account, he said:

"Well, the understanding was between me and Mr. Henley that this was turned over to her there, that he was to honor my checks or her's, just as long as he could identify the signature that it was either of our signatures. And he said he didn't care for that money; he said he didn't give a damn where it went to; that is just the way he answered."

He further stated:

"Well, I gave it to my wife, the whole thing—turned it over to her, and it was the understanding that we was both to check on it."

Then the court took the witness in hand and interrogated him:

"Q. Mr. Wallis, did you transfer these funds to your wife, in your wife's name for the purpose of hindering or delaying any of your creditors, or for the reason that you were afraid that some of your creditors would sue you? A. No, sir; I just turned it over there until I could get a fair settlement out of it. Q. Then you wanted it held so that your creditors couldn't get hold of it? A. There wasn't nothing said about holding it. Q. I am asking you now if you turned over these funds for the purpose of covering up any of these funds from any of your creditors or supposed creditors? A. No, sir. Q. What? A. No, sir. Q. Why did you turn it over and give it to your wife? A. Because I didn't want to be held up for a term of years, or anything like that and be bothered with it. Q. Who was going to hold you up? A. Well, I didn't know just who all would do it. Q. Then you did turn it over in her name for the purpose of keeping down lawsuits that you might have with some one that might claim you owed them? Is that right? A. Yes, sir."

It appears from the record that the evidence, on the controverted question involved, was conflicting, and presented an issue of fact for the jury to determine, and, this being the case, it was error for the court to direct a verdict for the defendant. Dempsey Oil & Gas Co. v. Citizens National Bank, 110 Okla. 39, 235 Pac. 1104.

Plaintiff claims that where the pass book, or deposit slips, or the bank's record, shows that the deposits are made from time to time to the credit of the depositor, and checks are drawn and paid in the ordinary course of business, monthly statements being rendered, the presumption is that the funds of the account belong to the person in whose name the account is kept. Phillips v. Yates Center Nat. Bank, 98 Kan. 383, 158 Pac. 23.

We think this contention is correct, but like other presumptions of fact, it is subject to be overcome by proof to the contrary, and where there is a conflict in the evidence on this question, it is for the jury to determine under proper instructions of the court.

Since there is no issue in the case as to defrauding creditors, and no person except plaintiff claiming the ownership of the money on deposit, we are reminded to say we do not think the evidence introduced on these issues was competent. It is a rule that requires no citation of authority that the evidence should be confined to the issues as made up by the pleadings.

Since this cause must be reversed for error of the court in sustaining the motion for a directed verdict, we do not deem it necessary to consider any other questions raised by the briefs of the parties.

The judgment should be reversed and a new trial granted.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc. p. 1568. (2) 7 C. J. p. 639 § 323; p. 696 § 425.