ANDERSON, STATE BANK EXAMINER, v. BASKIN & WILBOURN.

[74 South. 682, In Banc.]

BANKS AND BANKING. *Insolvency. Distribution of assets. Statute.*

Under the Bank Guaranty Act, Laws 1914, Chapter 124, the general creditors are entitled to participate in the distribution of the assets of an insolvent bank along with depositors; the depositors being protected by the guaranty provisions of the act.

APPEAL from the chancery court of Newton county.

HON. C. G. TANN, Chancellor.

Petition by W. E. Baskin and R. E. Wilbourn, partners doing a law business as Baskin & Wilbourn against E. F. Anderson, State Bank Examiner, Liquidator of the Bank of Newton.

From a decree overruling a demurrer to the petition, the defendant appeals.

Appellant is one of the bank examiners of the state and by virtue of his office is now liquidator of the Bank of Newton, whose affairs were taken charge of by the board of bank examiners under the power conferred by and the general terms of chapter 124, Laws of 1914. Appellees, W. E. Baskin and R. E. Wilbourn, are partners doing a general law practice in the city of Meridian. The estate of the Bank of Newton, after being taken in charge by the bank examiners, is being administered by the chancery court of Newton county in accordance with the provisions of the state banking law. In the course of the insolvency proceedings, appellees presented to the chancery court of said county an ancillary petition, in which it is averred that

114 Miss.—6

some two years ago one T. H. Harper filed suit in the circuit court of Newton county against the Bank of Newton seeking to recover damages; that Baskin and Wilbourn were employed to defend the case; that a trial was had in the circuit court, resulting in a judgment of one dollar in favor of the plaintiff, which judgment on appeal to the supreme court was affirmed; that a reasonable fee for their professional services is four hundred dollars, three hundred of which has been paid, leaving a balance of one hundred dollars still due and unpaid; that petitioners had presented to the bank examiner serving as liquidator their claim for allowance; and that the examiner had disallowed the claim, and petitioners asked that the court enter a decree approving and allowing the claim and directing its payment out of the general assets of the bank along with the payments to the depositors. It is the contention of appellees as petitioners in the court below that, as simple creditors of the Bank of Newton, they are entitled to share in the dividends declared by the receiver under the supervision of the court and in the distribution of the assets of the bank along with the depositors whose claims or deposits are guaranteed by the regular guaranty fund provided by the state banking law. It is the contention of the bank examiner that appellees have no right to share with the guaranteed depositors in the distribution of the assets until all of the guaranteed depositors are paid in full. There is no contention about appellant Anderson being in charge of the bank as liquidating officer, but the controversy arises over the position taken by appellant that the guaranteed depositors should first be paid out of the assets of the bank, and then, if there is any remaining assets, appellees, along with the other simple creditors of the bank, will participate in the distribution of such remainder. Appellees demurred to the ancillary petition; the chancellor overruled the demurrer; and it is this

decree, overruling the demurrer and granting an appeal to settle the principles of the case, that is brought here for review.

*Watkins & Watkins,* for appellant.

The legislature of 1914 passed what is known as the Bank Guaranty Act, being chapter 124 of the Laws of 1914, found beginning on page 107 of such public acts. The act was approved March 9, 1914. It provides a fund created· from assessments levied upon all the state banks doing business in this state, which fund, it is provided shall be used for the purpose of indemnifying the unsecured depositors of insolvent state Banks. (Secs. 23 and 24.), only the unsecured depositors are guaranteed by the Act; sec. 38. Section 59 provides what is known as the double liability of stockholders of the bank in favor of depositors. Section 36 deals with the question of the distribution of the assets; and section 60 provides in detail the manner of liquidation.

The theory of a guaranted bank under state laws is not of recent origin. Such banks were in existence in the United States one hundred years ago. The seeds were first planted in the states of Vermont and New York, but seems to have fallen by the wayside and in thorny places, and did not long survive their enactment. *People* v. *Walker,* 17 N. Y. 502; *In Reciprocity Bank,* 22 N. Y. 9; *Elwood* v. *State,* 23 Vt. 701; *Danby Bank* v. *State,* 39 Vt. 92, cited Note 32 L. R. A. (N. S.) 1006

The first state in recent years to provide such system was Oklahoma, which, at the session of 1907-1908, passed what is known as the Bank Guaranty Law The same was amended in the year 1910-1911, and; again, in the year 1913. The act was held constitutional by. the supreme court of the United States.) *Noble State Bank* v. *Haskell,* 55 Law. Ed. 112, 32. L. R. A. (N. S.), 1062.

About the year 1911, the state of Kansas adopted somewhat the same system, and the act was held con-

stitutional by the supreme court of the United State, although by its provisions for the distribution of its assets, depositors were given a preference over general creditors. *Assyria State Bank* v. *Dolley,* 55 Law. Ed. 123, And in the case of *Abilenen National Bank* v. *Dolley* (C. C. A.), 179 Fed. 461, 32 L. R. A. (N. S.) 1065, it was held that the Kansas act was not unconstitutional as discriminating against national banks.

In the case of *Oxford* v. *Love* (Miss.), 72 So. 123, this court held that the law now under discussion was not in violation of the state or federal constitution.,

The concrete question is presented as to whether or not general creditors of a bank in liquidation under the Guaranty Act of the state of Mississippi shall participate in the assets of the bank before the guaranteed depositors are paid in full. We respectfully submit that such was not the intention of the legislature. The object of the Guaranty Bank law was to create a fund out of which the depositors of banks in the state of Mississippi should be paid, the idea being to make the banks in Mississippi insure the other banks, thereby securing safety to depositors, by depositors of course, we mean the kind of depositors discussed in paragraph 1 of this brief. The idea of the legislature evidently was that out of the assets of the bank, there should first be paid those depositors whose claims were guaranteed by the guaranty fund, and if there should be any amount left over after paying the guaranteed depositors, then, that the balance should be distributed among the creditors of the bank the creditors of the bank would be secured depositors of the bank unpaid and other forms of course, such as bills payable, cashier's checks, open accounts, etc. The state guaranty fund is created by levying a tax in the form of an assessment against every bank in the state of Mississippi, and this especially constituted fund is placed in the state treasury and invested as a protection to the depositors of any failed bank. It was evidently the intention of the legis-

lature that before any claim should be made by the
depositors of a failed bank against this guaranty fund,
the assets of the failed bank should first be applied
to the payment of such deposits as would constitute a
claim against this fund. Such has been the uniform
construction of the state of Oklahoma of the various
acts of that state. In addition to the cases to which we
have already directed the attention of the court, we
call the attention of the court to the case of· *Lankford,
State Bank Com'mr.* v. *Oklahoma Engraving & Print-
ing Co.,* 35 Okla. 535, 130 Pac. 278.

We suggest to the court the followingg self-evident
reasons why it was the intention of the Mississippi
legislature  to exclude general creditors from any dis-
tribution in the assets of an insolvent bank until the
guaranteed depositors should be paid in full.·

(A) It is very true that section 36 of the act provides
for a distribution of the assets of the bank among credi-
tors. But it is evident from the same section that the
word "creditor" is not used in the ordinary sense, the
act using the following language: "After the officer
in charge of the bank shall have realized upon the as-
sets of such bank and exhausted the double liability
of its stockholders, and shall have paid all funds so
collected in dividends to the creditors, he shall certify
all balances due on guaranteed deposits (if any exist)
to the Board of·Bank Examiners," etc.

It will be noticed that the act provides for a distribu-
tion of the proceeds of stockholders' liability to the
creditors. Under section 59, however, of the act provid-
ing for the stockholders' liability, such stockholders
are only liable to depositors. Therefore, it is very
evident that the legislature in using the word "credi-
tor" in section 36, used the term in a different sense,
because to apply to the word creditor the usual and
accepted meaning would make section 36 in utter con-

flict with section 56, since under the latter named sec-
tion, the proceeds of stockholders' liability cannot be
used to satisfy creditors. Therefore, it is very evident
that the word "creditors" in section 36 has much more
restricted meaning. We do not mean to say that the
liability of stockholders under section 59 is confined or
intended exclusively to benefit guaranteed depositors.
The court will notice that there are two kinds of deposi-
tors under section 33, secured and unsecured depositors;
that is to say, or to state the proposition differently,
guaranteed deposits and deposits which are not guaran-
teed. We think stockholders are liable for the benefit
of any depositor, whether the depositor be guaranteed
by the bank or not. For instance, suppose a man should
deposit money with a bank, taking security therefor;
suppose that the collateral should not be sufficient or
equal to the debt, upon the insolvency of the bank, we
think that such depositor, not guaranteed, would have
a claim as a depositor against the bank, and that such
depositor would be protected by the stockholder's
liability; suppose, again that a person should deposit
money in a bank at a rate of interest greater than four
per cent., such depositor would not be guaranteed by the
act, and would not be entitled to the benefits of the
guaranty system. The party would be a depositor, how-
ever, and would be entitled to share in the proceeds of
the stockholders' liability. In other words, section 59
uses the following language: "The stockholders of
every bank shall be individually liable, actually and
ratably, and not for one another, for the benefit of the
depositors in said bank."

We think the word "depositors" in section 59 in-
cludes all classes of depositors, whether guaranteed or
not, and that the stockholders' liability is not limited to
merely guaranteed deposits. This being true, then we
can only harmonize sections 36 and 38 and 59 in the fol-

lowing way: The following language contained in section 36, to-wit, "After the officer in charge of the bank shall have realized upon the assets of such bank," should be construed to mean that the liquidating officer of the state shall apply the assets of the bank to the payment of guaranteed depositors; and, after having done so, then follows the next position: "And exhausted the double liability of the stockholders, and shall have paid all funds so collected," etc., referring to the double liability of stockholders, and the word "creditors," meaning and referring to depositors, whether guaranteed or not. In other words, that the assets of the bank would first be applied to the payment of guaranteed depositors; the stockholders' liability would be applied to the satisfaction of guaranteed deposits and deposits not guaranteed; then the claims of guaranteed depositors would be paid out of the guaranty fund.

This construction entirely harmonizes sections 36, 38 and 59. They are harmonized by interpreting the word creditors in section 36 as meaning depositor and creditor; interpreting the words, "And shall have paid all funds so collected in dividends to the creditors," as referring to the double liability of stockholders. This construction entirely harmonizes the three sections, and is also in harmony with the general meaning of the act.

(B) To hold that creditors of a bank, that is to say, general creditors in the ordinary sense, can share in the assets of the bank before the satisfaction of guaranteed depositors, would have a tendency to increase, and would directly increase the liability of the stockholders. Under section 59 stockholders are liable for the claims only of depositors. A complete defense in favor of a stockholder would be that the assets in the hands of the liquidating officers were sufficient to pay the deposits of both characters. In other words, stockholders can

be held only liable for such amount as is necessary to pay these depositors. Now, that being true, it necessarily assets of the bank in advance of the satisfaction of the claims of guaranteed depositors would, in the same follows that to permit general creditors to share in the proportion increase the liability of stockholders, which is a very important consideration.

(C) If the court should hold that general creditors could participate in the assets of the bank, prior to the payment of the guaranteed depositors, then, in such case, this would permit the general creditors to share in the guaranty fund. Take the case of an insolvent bank having guaranteed depositors and other general creditors; say that the assets of the bank were insufficient to pay either the guaranteed deposits or the guaranteed depositors and the general creditors; in such case the tax on the guaranteed fund would necessarily be increased by the participation of the general creditors in the assets of the bank. Such a state of things is contrary to the very spirit, and meaning and purpose of the guaranty banking law; in fact, such a construction would be imposing a liability upon the guaranty fund not contemplated. In other words, it would be subjecting this special fund, created by a tax upon all banks to the payment of claims of general creditors, when, as a matter of fact, it was only contemplated that the fund should be paid towards the liquidation of guaranteed deposits.

We again call to the attention of the court in this connection the following language in section 60 of the Act, near the bottom of page 137: ''Whenever the bank examiner shall have paid to each and every depositor and creditor of such corporation, whose claim, or claims, or such creditor or depositor shall have been duly proven and allowed, the full amount of such claims,'' etc. It will be noticed that the word depositor is used prior

to that of creditor, rather indicating the order of the payment and in this section, the word creditor is evidently used in the ordinary and accepted sense.

We respectfuly submit that the construction which will harmonize the various conflicting sections. If the court holds the word creditor in section 36 to mean general creditors of the bank, then such section permits creditors to share in the proceeds of stockholders' liability, which is in utter conflict with section 59. The court should seek a construction which will harmonize every section in the act, even if words are given a different meaning.

We respectfully submit that the action of the court below in holding that the appellees as general creditors were entitled to participate in the assets of the bank prior to the payment of the guaranteed depositors was erroneous and that the decree of the chancellor should be reversed, and the demurrer of the appellant sustained to their ancillary petition and the same dismissed.

*Baskin & Wilbourn,* for appellee.

The scheme provided by the legislature appears to us to be perfectly plain and to be susceptible of being worked out without the slightest conflict between any of the sections, and that scheme, as we understand it, briefly stated, is this:

First, the liquidator of the bank is not required to pay guarantee depositors out of the guarantee fund, nor is it the intention of the act that he should give the guaranteed depositors the obligation of the state for the deposit, nor the obligation of the department for the deposit, but simply that he should issue to the class of depositors entitled to the benefit of the guarantee feature a certificate showing, in substance that the bank at the date it was taken over by the banking department, was indebted to the guaranteed depositor in a particular sum;

and that the particular deposit was of the class of deposits entitled to such benefit as the guarantee feature of the act provided it should ultimately receive.

The liquidator of the bank would also issue to a depositor not entitled to the benefit of the guarantee feature of the act, a similar certificate, but so worded as to indicate the character and class of deposit for which it was issued.

The liquidator must also list and approve the claims of general creditors. Second, the liquidator would then reduce the assets of the bank to cash, and give notice to all creditors of the bank of the purpose to declare dividends.

If the cash proceeds of the bank were sufficient to pay all creditors, including depositors, they would receive their amounts in full, and any excess would be turned over to the stockholders.

If the assets were not sufficient to pay the creditors and depositors in full, they would be ratably distributed to all creditors and depositors as provided in section 36, wherein it is said: "And shall have paid all funds so collected in dividends to the creditors," meaning both depositors and creditors, then "shall certify all balances due on guaranteed deposits to the Board of Bank Examiners, etc."

The fact that section 36 requires the Bank Examiner, before certifying balance due on guaranteed deposit to the Board of Bank Examiners, to exhaust the double liability of stockholders, does not change the ordinary and accepted meaning of the word "creditors" as used in section 36 for this reason; construe section 36 with section 59 and considering that depositors both guaranteed and not guaranteed are alone entitled to share in the double liability of stockholders, in a case where the assets were not sufficient to pay the debts of the bank in full, both the debts due creditors and depositors, the liquidator would have in hand two funds, as follows: 1. The proceeds of the general assets of the bank; 2.

The proceeds of the double liability of the stockholders.

Out of fund No. 1. the liquidator would distribute a dividend to the creditors—that is, depositors guaranteed and not guaranteed, and general creditors. Out of fund No. 2, he would distribute a dividend as far as it would go, to depositors, guaranteed and not guaranteed.

If there were then left any guaranteed depositor who had not received their amounts in full, these balances would be certified to by the bank examiner and paid out of the guaranteed fund.

This method of distribution, we submit, is in the line with the plain provision, of the act and harmonizes the section which counsel think are in conflict, that supposed conflict appears to us to be more seeming than real.

It does not occur to us that this method of distribution must be held contrary to the intent of the act, because as result thereof, the liability of stockholders might be increased.

The legislature did not provide, as it could easily have done, and we submit would have done, if such had been its purpose and intent, that depositors should have a first lien on the assets of the bank and should be first paid before general creditors and before enforcement of the stockholder's liability.

It seems to us that the legislature meant that if, after depositors and creditors had received a ratable distribution of the assets of the bank, depositors were still unpaid, the stockholders double liability should or could be resorted to in interest of the depositors.

The legislature was content to give depositors the advantage over general creditors only to the extent of the double liability of stockholders, and where deposits were guaranteed, to the extent of the balance that might be due after exhausting their share of the general assets and their share of the double liability of the stockholders.

Those investing their funds in the operation of a bank aré charged with knowledge that the creditors as well as the depositors have claims upon the general assets of the bank, and charged with knowledge that their liability as stockholders is to such extent as it might be necessary to resort to their double liability to pay depositors whose ratable share of the general assets had not been sufficient to pay in full.

The legislature could certainly not have intended to be so tender of the rights of stockholders as to relieve them from the burden that has always rested upon them, to wit, the right of depositors and creditors to payment out of the assets before the stockholders could receive anything whatever.

The method of our statute is entirely different from the Oklahoma Statute. The banking department is not given any lien upon the assets of the insolvent bank. There is no provision for the payment of guaranted deposits out of the guarantee funds prior to the final winding up of the affairs of the bank.

The question in this case is not what would be the effect of the interpretation of the act that we contend for, but what is the true interpretation of the act.

In other words, what is the intent of the legislature as indicated by the provisions they have actually made, not what provisions they may have intended to make, and not what provisions, perhaps, it ought, in the opinion of some, to have made. We are persuaded to this view, further, by the following provision of the act.

In section 36 notice of the amount of each dividend to be paid is required to be given "creditors." Further in section 36, the expression is used; "And shall have paid the funds so collected in dividends to the "creditors."

In section 59, though depositors are creditors, the legislature is careful not to use the word "creditors" but says: "for the benefit of depositors in said bank,

etc," but without drawing any distinction between the depositors as is done in section 33 of the act.

In section 60, it is provided that claims presented and allowed after the expiration of the time fixed in the notice to creditors to prove their claims, shall be entitled to share in the distribution "only to the extent of the assets in the hands of the bank examiner at the time claims are filed without allowance for previous distribution."

In section 60 notice is only required to be given to persons having claims other than deposits, simply because the statute makes the books of the bank a *prima facie* proved claim against the bank so far as deposits shown thereon are concerned. Again in section 60 of the act it is provided as follows: "At any time after the expiration of the date fixed for the presentation of claims, the bank examiner may out of the funds remaining in his hands, after the payment of expenses, declare and pay one or more dividends to creditors, and as soon as practicable thereafter, he shall declare and pay a final dividend, such dividend to be paid to such persons and in such amount and upon such notice as may be directed by the circuit or chancery court having jurisdiction of the cause in the county in which the principal office of such corporation is located."

This latter provision of the quoted portion of the statute we apprehend, was inserted so that upon the final dividend all objections to the claims of creditors, including claims of depositors, might be heard by the court and determined by the court.

Our view is further supported by the consideration that section 60 seems to give any creditor, whether depositor or general creditor, the right to object to the claim of any other creditor whether general creditor or depositor.

We do not construe, as do counsel, the language of section 60, to give any priority of payment to a

depositor because of the relative position of the word in the clause of section 60 referred to by counsel.

This clause is as follows: "Whenever the bank examiner shall have paid to each and every depositor and creditor of such corporation whose claim or claims as such creditor or depositor, shall have been duly approved and allowed the full amount of such claims, etc." In one place the terms are connected this way, "depositors and creditors" and in another place this way "creditor or depositor."

It seems to us unsound to declare a lien by intendment in favor of a depositor on the argument that the statute used the word "depositor" in one place before it did the word "creditor." This to our minds does not suggest any order of payment.

Stevens, J., delivered the opinion of the court.

(After stating the facts as above). The only question for decision is whether the liquidator, in administering upon and winding up the estate of an insolvent banking establishment under the supervision of the chancery court should ditribute the assets *pro rata* to depositors and general creditors, or should he give priority to the guaranteed depositors. The answer to this question is determined by the provisions of the Bank Guaranty Act. The issue here raised is occasioned by different interpretations of the act itself. The statute we are now called upon to construe is lengthy, and is divided into 69 sections. About the only sections which shed any light upon this controversy are sections 23, 24, 36, 38, 59, and 60. By sections 23 and 24 a fund is created from assessments levied upon all state banks to guarantee all deposits not otherwise secured, or, to state differently, to indemnify simple or primary depositors. Section 38 defines the beneficiaries of the guaranty fund. Sections 36 and 60 provide for the distribution of the assets and the procedure for liquidating the bank's affairs. By

section 59 double liability is imposed upon the stockholders in favor of depositors. A reading of this statute will show that depositors who are not otherwise secured are made safe in their deposits in two ways: First, by section 59 the stockholders are individually liable "for the benefit of the depositors in said bank to the amount of their stock at the par value thereof, in addition to the said stock. . . . Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by any receiver, or other officer succeeding to the legal rights of said bank." Secondly, by section 38 "all deposits not otherwise secured shall be guaranteed by this act." Under the procedure outlined by sections 36 and 60 the bank examiner, on finding a bank to be insolvent, is charged with the duty of taking charge of the institution and of winding up its affairs. In so doing the act provides that he shall issue to each depositor a certificate, evidencing the depositor's claim, bearing six per cent. interest per annum, and that in the insolvency proceedings dividends shall be declared upon these interest-bearing certificates. He is further charged with the duty of causing "notice to be given by advertisement in such newspaper as he may direct weekly, once a week for six consecutive weeks, calling on all persons who may have claims, but not including deposits shown by the books of the bank which shall *prima facie* be a proven claim against the bank, against such corporation, to present the same to the bank examiner and make legal proof thereof, at a place and within a time to be specified in this notice, not less than ninety days from the date of the first publication of the notice." Also, "shall mail a similar notice to all persons whose names appear as *creditors* upon the books of the corporation." He is charged with the duty of auditing, allowing, or rejecting the claims of each and every "*claimant* or depositor." One sentence in section sixty declares that:

"Claims presented and allowed after the expiration of the time fixed in the notice to creditors shall be entitled to share in the distribution only to the extent of the assets in the hands of the bank examiner at the time claims are filed, without allowance for previous distribution."

He is required to make in duplicate "a full and complete list of the claims," and his "inventory and list of claims shall be open at all reasonable times to inspection." The act then expressly provides:

"At any time after the expiration of the date fixed for the presentation of *claims,* the bank examiner may, out of the funds remaining in his hands after the payment of expenses declare and pay one or more dividends to *creditors,* and as soon as practicable thereafter, he shall declare and pay a final dividend. . . .Objections to any claims or deposits . . . may be made by any party interested. . . . Whenever the bank examiner shall have paid to each and every depositor *and creditor* of such corporation whose claim or claims as *such creditor* or depositor shall have been duly proven and allowed, the full amount of such claims, . . . the bank examiner shall call a meeting of the stockholders." etc.

We have underscored words indicating that simple creditors are to be paid along with depositors. At the stockholders' meeting called by the examiner an agent or agents are to be selected to wind up the affairs of the corporation, and provision is made that if there are dividends or unclaimed deposits remaining unpaid in the hands of the examiner for six months after the order for final distribution, the same shall be deposited in one or more of the state depositories to the credit of the bank examiner "in trust for the several depositors in *and creditors* of the liquidated bank." Any interest earned by the money held by him in trust may be applied toward defraying the expense incurred in distributing unclaimed deposits or dividends "to the

depositors *and creditors* entitled to receive the same.''
We quote so freely from the act itself for the purpose
of directing attention to the fact that the legislature
used the word "creditors" advisedly. There would
rarely be occasion for taking charge of any bank which
is not insolvent. The main purpose accomplished by the
guaranty feature is to indemnify simple depositors
against loss brought about by insolvency. If then, the
contention of appellant is sound, it would follow that in
most instances the assets of insolvent banks would be
consumed in first paying the guaranteed depositors,
and the general creditors would get nothing. We do
not believe the legislature intended to produce such a
result. The act expressly declares that the guaranty
provided does not apply to bills rediscounted, to bills pay-
able, to money borrowed from its correspondents or
others, or to deposits bearing a greater rate of interest
than four per cent. per annum. The construction insisted
upon by appellant would result practically in outlawing
these large and honest obligations of the bank. If
a bank in failing circumstances borrows large amounts
from its correspondent to avert insolvency proceedings,
these generous lenders and benefactors of the bank, in
event of a crash, could receive no dividends until the de-
positors are paid in full. Even a judgment against the
bank would avail nothing until the depositors are
satisfied. It is a matter of common knowledge that a
going banking establishment owes many legitimate obli-
gations other than its liabiliay to simple depositors.
The point contended for would violate the time-honored
principle of equity that if two creditors, one secured and
the other unsecured, proceed against a certain fund or
property of the joint debtor insufficient in value to
pay both claims, and the secured creditor has a lien on
other and different property of the common debtor, the
unsecured creditor may generally compel the other first
to exhaust his security. We do not say that the
legislature might not provide that the depositors should

114 Miss.—7

first be paid out of the bank's assets, or that the state guaranty fund should first pay the depositors and then be given a first lien upon the bank's assets. Our view is that the legislature has not so provided, and did not so intend to provide.

The only authority in support of appellant's contention is certain language employed in the latter part of seition 34 and the decision of the Oklahoma supreme court in *Lankford* v. *Oklahoma Engraving Co.*, 35 Okl. 404, 130 Pac. 278, and *Lankford* v. *Schroeder*, 147 Pac. 1049. L. R. A. 1915F, 623. There appears some difference between the Oklahoma and the Mississippi statutes. The opinion in the Oklahoma court in the first-named case says:

"Section 323, Comp. Laws 1909, provides that the state shall have, for the benefit of the depositors' guaranty fund, a first lien upon the assets of any defunct bank or trust company, and all liabilities against the stockholders, officers, or directors thereof, and against all other persons, corporations, or firms; and that such liabilities may be enforced by the state for the benefit of the depositors' guaranty fund. The effect of this statute is to make the state a preferred creditor until any deficiency in the guaranty fund, created by the payment therefrom of the depositors of an insolvent bank, is made up. After that, any remaining assets of the bank become available for the purpose of being prorated and distributed among the general creditors of the bank."

The Oklahoma plan is for the depositor to be paid in cash out of the state guaranty fund or to have issued interest-bearing treasurer's certificates, and after the depositors are paid, the state officials take over the assets of the bank for the purpose of restoring to the treasury the money advanced in paying depositors or of liquidating the treasurer's certificates. Under the Mississippi plan the officers in charge of the bank must first realize upon the assets of the bank and exhaust the

double liability of the stockholders, and after he "shall have paid all funds so collected in dividends to the creditors, he shall certify all balances due on guaranteed deposits (if any exists) to the board of bank examiners, who shall then upon his approval of such certificates, draw checks upon the state treasury, to be countersigned by the auditor of state, payable out of the bank depositors' guaranty fund in favor of each depositor for the balance due on such proof of claim." By this plan the "balance due" is certified to and paid out of the guaranty fund, and the amount of this balance is not attempted to be ascertained, and cannot be ascertained until the assets of the bank have been realized upon and all creditors paid *pro rata* as far as the assets go. This is a simple but thoroughly equitable plan. By this plan the depositors are safe. They first have a right to share in the common assets. They are next given the right to proceed against the stockholders for the double liability provided by the statute, and then, if they are not made whole, any balance due is guaranteed by the state fund if there is any delay, their certificates are bearing interest at six per cent., the lawful rate. They ultimately get every dime of their deposits, with legal interest. There is then a difference in the Oklahoma and the Mississippi statutes, and a difference in the procedure outlined. The fact that the chancery court is given jurisdiction to administer the insolvent estate and to allow or disallow claims of all creditors manifests a legislative intent to distribute as far as it will go the assets of the bank amongst all beneficiaries; first to do exact justice by and between *all* creditors. If it then develops that the depositors are not paid in full, they are given relief against the shareholders of the bank and the right to participate in the guaranty fund. This is consistent with the idea that the guaranty fund is *security* only.

There is one sentence in the latter part of section 34 that would appear to support appellants' contention.

This, however, is a general statement, and if construed as giving the guaranteed depositor priority, it would be in direct conflict with other more specific language of the act, detailing the manner of liquidating the bank, paying creditors, and certifying the "balance due" to the state officials. There would be little use in making the stockholders liable to depositors, and there would be little meaning in this provision of the statute, if the construction contended for by appellant is to prevail. This construction in its practical operation would simply mean that the state would first pay the depositors and then claim a first lien upon the assets of the bank. In doing this the state would certainly have no right of action against the stockholders. Section 59 does not undertake to make the stockholders liable to the state. The provisions of the statute whereby depositors receive interest-bearing certificates would mean little if the depositors have a right forthwith to demand and receive payment out of the guaranty fund. Such is not the scheme outlined by the statute itself.

*Affirmed.*

ETHRIDGE, J. (dissenting). I cannot concur in the conclusion reached by the majority in this case, nor in the reasoning which they employ to reach this conclusion. I think the facts are fairly stated in the majority opinion, and I accept that statement for the purposes of this opinion.

Looking at the act as a whole, and each of its several parts, I think it mainfest that the purpose of the legislaure was to make a favored class of the common depositors who were not receiving interest on their deposits, and it was not the purpose of the act to place all the creditors of the bank on a parity in the distribution of the assets of the bank. The majority opinion practically reads out of the act the concluding portion of section 34 of the act which reads as follows:

"The fund provided for in sections 33 and 34 of this act shall be for the purpose of paying at once, and under the direction and control of the board of bank examiners of the depositors of banks that are declared insolvent by the board of bank examiners, or banks that shall fail. Said payments to be made in the manner provided by the said board of bank examiners. All payments made to the depositors of banks under the provisions of this act shall be repaid out of the assets of any bank whose depositors are paid out of this fund, and shall be a first lien on said assets."

In my opinion this paragraph is to be borne in mind on reading each of the sections referred to in the majority opinion as fully as if written at large into the said sections at the appropriate place therein. Under the statutory rules of construction all parts of the law are to be considered together, and each part is to be given effect, and it is not necessary for the Legislature to rewrite a provision contained in one section into the other sections of the act. I think this portion of law has been disregarded and read out of the act by the majority opinion. In my opinion, it is the leading thought of the act, the keynote and corner stone of the entire act. What does it mean when it says that:

"All payments made to the depositors of banks under the provisions of this act shall be repaid out of the assets of any bank whose depositors are paid out of this fund, and shall be a first lien on said assets"?

It clearly means that the bank examiners are to pay the common depositors, whose claims appear free from suspicion, in full out of the guaranty fund and then to impress a first lien, that is to say, a lien superior to all other liens, upon the assets of the bank for the repayment of the fund taken from the depositors' guaranty fund. Surely my brethren do not believe, and do not mean to say, that lien creditors of the bank are placed on an equal footing as to the assets of the bank with

those who have no liens and who would, in the absence of this act, be postponed until the lien creditors were first satisfied. If the act was so construed by the legislature passing it, they fail to express it in appropriate language, and I cannot think that it so intended. The only cases I have found bearing on the question are the Oklahoma cases construing the Oklahoma banking act, which support the view that I contend for in this case. See *Lankford* v. *Oklahoma Engraving & Printing Co.*, 35 Okl. 404, 130 Pac. 278; *Columbia, etc., Co.* v. *U. S. F. & G. Co.*, 33 Okl. 535, 126 Pac. 556, and *Lankford* v. *Schroeder*, 147 Pac. 1049, L. R. A. 1915F, 623, in which cases the supreme court of Oklahoma, construing the Oklahoma statute, held that a state was a preferred creditor and that the claims of depositors must be paid in full before the common creditors of the bank were paid anything. The Oklahoma statute (Oklahoma Session Laws 1907-1908, p. 141, section 6) reads as follows:

"In the event that the bank commissioner shall take possession of any bank or trust company which is subject to the provisions of this act, the depositors of said bank or trust company shall be paid in full, and when the cash available or that can be made immediately available of said bank or trust company is sufficient to discharge its obligations to depositors, the said banking board shall draw from the depositors' guaranty fund and from additional assessments, if required, as provided in section two, the amount necessary to make up the deficiency, and the state shall have for the benefit of the depositors' guaranty fund a first lien upon the assets of said bank or trust company, and all liabilities against the stockholders, officers and directors of said bank or trust company and against all other persons, corporations or firms. Such liabilities may be enforced by the state for the benefit of the depositors' guaranty fund."

In my opinion, the Oklahoma statute, while somewhat more specific than our own statute, does not go any further in impressing upon the bank asset claims of the depositors and of the estate where the moneys are paid out of the state guaranty fund. An attentive examination of the clause of our law just quoted in connection with the quoted act of Oklahoma will carry the conviction. in my opinion, that my construction is correct. Chapter 124, section 33, Laws of 1914, p. 123, reads as follows:

"Any bank doing business in this state under the general banking laws of Mississippi and any bank subject to the provisions of this act which may, after the passage of this act be authorized to do business in this state, is hereby authorized and empowered to participate in the assessments and benefits and to be governed by the regulations of the bank depositors' guaranty fund of the state of Mississippi hereinafter provided for. Before any bank shall become a guaranteed bank within the meaning of this act a resolution of its board of directors, authorized by its stockholders, duly certified by its president and secretary, asking therefor, in form to be provided by the board of bank examiners shall be filed with said board; who shall upon the filing of such resolution, authorize one of the examiners to make a rigid examination of the affairs of such bank, and if it is fund to be solvent, to be properly managed and conducting its business in strict accordance with the banking law, such examiner shall after the bank shall have deposited with the state treasurer bonds or money hereinafter provided issue to such bank a certificate stating in substance that said bank has complied with the provisions of this act, and that its depositors are guaranteed by the bank depositors' guaranty fund of the state of Mississippi, as herein provided."

Section 34 provides that before receiving such certificate according to section 33 of the act the bank shall, in good faith, deposit and at all times maintain with the state treasurer, subject to the order of the bank exam-

iners, certain bonds to the amount of five hundred dollars for every one hundred thousand or fraction thereof of the average deposits eligible to guaranty under the act, provided that each bank shall deposit not less than five hundred dollars and then provides that in addition each bank shall pay in cash an amount equal to one-twentieth of one per cent. of the average deposits eligible to guaranty, less its capital and surplus, and the same shall be credited to the depositors' guaranty fund with the state treasurer, subject to the order of the bank examiners, and providing that the minimum in each case shall be not less than twenty dollars. Then follows the clause as quoted in the concluding part of section 34.

Section 35 requires the bank examiners to make assessments during January of each year of one-twentieth of one per cent. of the average guaranteed deposits less capital and surplus, the minimum in each case to be twenty dollars until the total fund placed to the credit of the bank depositors' guaranty fund shall be approximately five hundred thousand dollars over and above the cash deposited in lieu of bonds. When said amount is reached, the assessments to be discontinued, but if it shall become depleated, new assessments shall be made until the amount is restored, and concludes:

"The treasurer of the state shall hold this fund in the state depository banks as provided by law governing these funds subject to the order of the board of bank examiners to be countersigned by the auditor of state for the payment of depositors of failed guaranteed banks as hereinafter provided. The state treasurer shall credit this fund quarterly with its proportionate share of interest received from state funds computed at the minimum rate of interest provided by law, upon the average daily balance of said fund."

All the funds provided in the above portions of the act are funds for the guaranty of bank deposits.

Section 38 of the act provides what class of deposits are guaranteed under the act, and provides that:

"All deposits not otherwise secured shall be guaranteed by this act. The guaranty as provided for in this act shall not apply to a bank's obligation as indorser upon bills rediscounted, nor to bills payable, nor to money borrowed from its correspondents or others, nor to deposits bearing a greater rate of interest than four per cent. per annum. Each guaranteed bank shall certify under oath to the board of bank examiners at the date of each called statement the amount of money it has on deposit not eligible to guaranty under the provisions of this act, and in assessing such bank this amount shall be deducted from the total deposits."

It will be seen from this act that secured deposits and general creditors of the bank are not guaranteed, and it does not apply to deposits that bear a greater rate of interest than four per cent. per annum.

Section 59 of the act creates an additional liability against the stockholders above the value of their stock. The section in full reads as follows:

"The stockholders of every bank shall be individually liable, actually and ratably, and not for one another, for the benefit of the depositors in said bank to the amount of their stock at the par value thereof in addition to the said stock; but persons holding stock as executors, administrators, guardians, or trustees, and persons holding stock as collateral security, shall not be personally liable as stockholders, but the assets and funds in their hands constituting the trust shall be liable to the same extent as the testator, intestate, ward or person interested in such trust fund would be, if living or competent to act; and the person pledging such stock shall be deemed the stockholder and liable under this section. Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by any receiver, or other officer succeeding to the legal rights of said bank."

No creditor except the depositor has any right to participate in the funds collected under this section, and this, in my opinion, is a strong argument against the right of the general creditors to participate in the assets of the bank until the depositors have first been paid. It was not the purpose of the legislature to impose this double liability for the protection of depositors on the stockholders until the assets of the bank had been exhausted in the payment of guaranteed deposits.

Section 36 of the act deals with the liquidation of the bank by the bank examiners without court proceedings. Of course, in considering this section, we must consider that if the assets are ample to pay the guaranteed deposits and the other depositors, and then to pay, either in whole or in part, the other creditors, the bank examiners are to pay those claims, but it does not, in my opinion, warrant the construction that the general creditors share alike with the depositors out of the assets of the bank. On the contrary, I think the concluding portion of the section supports my contention. I quote as follows:

"Provided, however, that whenever the board of bank examiners shall have paid any dividend of the depositors of any failed bank out of the bank depositors' guaranty fund, then all claims and rights of action of such depositors so paid shall revert to the board of bank examiners for the benefit of said bank depositors' guaranty fund, until such fund shall have been fully reimbursed for payments made on account of such failed bank, with interest thereon at three per cent. per annum."

Of course, the legislature in dealing with the liquidation of the bank must deal with the situation that might easily arise at some critical period of the state where the depositors' guaranty fund would not at once pay off the depositors. If a large number of banks should become insolvent within a short time of each other and owed the depositors large sums, the guaranteed fund

would not be adequate to pay these in full, and the depositors would have to wait liquidation of the assets of the bank, and would not, by reason of this fact, surrender any of their rights to have their claims first paid out of this fund.

Section 60 of the act is a lengthy section, but seems to provide for the liquidation of banks under the supervision of courts, and, in substance, is not materially different from section 36. None of the provisions (referred to in the majority opinion), of section 60, in my judgment, warrants the conclusion that the common creditors have equal rights with the depositors and with the secured creditors. Of course, a depositor is a creditor and the word "creditor" may have a different application in its use in different provisions of the statute. Both section 36 and section 60 recognize the fact that the common secured creditors have rights against the assets of the bank, and the only difference in my opinion and the majority opinion on this is as to whether such rights are coextensive with the rights of depositors or whether they are postponed until the depositors are first paid. A significant feature of section 60 is that in requiring the bank to give notice to creditors to present claims that such notice is not required to include depositors shown by the books of the bank, which depositors so shown are *prima facie* correct. The scheme is elaborate, and provides for a contest of claims both of deposits and other claims, necessarily this must be so; otherwise a fictitious depositor, appearing on the books of the bank, would absorb the assets of the bank to the deteriment of the other depositors and other creditors of the bank. The act also recognizes that there would be cases in which the depositors would not promptly present the claims and draw them from the fund, and provided that in such case, if they were not drawn within a certain period of time, they should cease to draw interest which was manifestly just, considering the rights of other creditors of the bank. Of course,

where it was manifest to the bank examiner in administering the bank's affairs that the funds in his hands and the assets of the bank would pay, not only the deposits, but also the creditors, either in whole or in part, then dividends could be paid as common creditors in such situations. If the act is looked at from this angle, many of the provisions which seem to convince the majority that the secured general creditors are to share in the dividends can be explained.

There is another observation I desire to make, and that is that the act in question imposes burdens on innocent banks in no wise responsible for the failure of the bank that becomes insolvent and fails. Each bank in the state is required to contribute whatever amount called for by the bank examiners, to be paid into the guaranty fund up to the required amount. In my opinion, the legislature did not intend to impose this burden on other banks unless the assets of the bank would not pay the depositors of the bank in full. The construction put upon the act in the majority opinion materially and largely increases this obligation of other innocent banks to assume and pay the debts of other banks over which it had no control or supervisory power. Such a requirement would be manifestly unjust, in my opinion. The object of the bank guaranty fund was to preserve the public credit and the financial stability of the banking interest, because it is well known that if a bank failure occurred where it has large deposits, it carries financial ruin to many other innocent business interests of the community. Prior to the passage of the banking act there had been many failures of many banks in this state, and people who had placed their funds in the banks not for the purpose of making a profit on the funds but for the convenience of carrying on their own business were swept into the vortex of ruin. The conditions found on investigation were such that it was shown that many banks had been doing a banking business practically on no capital at

all, and as long as financial conditions were prosperous in the state this was not made manifest, and was not known to the public generally. With the advent of the cotton pest, the boll weevil, came a stringency in financial and business circles that brought these insolvent banking institutions to an untimely end, and left many people who supposed that they had means deposited in the bank insolvent and unable to meet business demands. It was this situation that prompted the legislature to provide for the guaranty of deposits and to make of depositors a favored class. It was not the purpose of the legislature, in my opinion, to guarantee the general creditors who did business with the bank with the view of making profit from such business dealings. Many restrictions are found in the act on the banking business as applied to deposits, but few restrictions as applied to general business dealings with others than depositors. For instance no depositor can receive more than four per cent. interest without losing his right as a guaranteed depositor and taking his place with the common creditors, while the common creditors may receive, if the bank will pay, as high as our highest legal rate, to wit, eight per cent. Under the construction adopted, these heavy obligations bearing high interest rates may be, in practical effect, imposed upon solvent and responsible banks of the state who, perhaps, would not, but for this compulsion, pay anything like six or eight per cent. I am therefore of the opinion that the court below erred in allowing the claim presented.

COOK, P. J. (specially concurring in the dissenting opinion). I believe that the foregoing dissenting opinion prepared by Brother Ethridge correctly interprets the purposes of the guaranty banking law. To give effect to the entire act it is very clear to my mind that the common depositors, as defined by the act, are necessarily preferred creditors. In other words, that class of creditors are first paid in full out of the

guaranty fund, but if the guaranty fund is not sufficient, entire assets of the bankrupt bank are impounded to pay the balance due to. the common depositors. If the majority of the court are right section 34 of the act means nothing at all.

I fear that the court has written a statute, rather than enforced a statute already written. The history of banking just preceding the enactment of this statute explains and gives life to the thought reflected in the act. The money lenders, whether they were other banks or men who knew what they wanted, always absorbed the assets of insolvent banks, while the less capable depositors were left with the bag to hold, and financial ruin followed in the community affected by the failure of the bank. It is my opinion that the act in question reflects two dominant purposes, to wit: (1) The supervision and control of banking; (2) the protection of unsecured depositors.

The first purpose was to prevent wild-cat banking, while the second purpose was to pay the depositors in case there was. a disaster.