[No. 17035. *En Banc.* May 1, 1922.]

THE STATE OF WASHINGTON, *on the Relation of Dan Ashley Lewis, Plaintiff,* v. JOHN P. DUKE, *as Supervisor of Banks, et al., Respondents.*[1]

STATUTES (71)—CONSTRUCTION—ACTS IN PARI MATERIA. The rule that statutes in *pari materia* should be construed together applies to the state banking code and the bank guaranty act, which were passed at the same session and approved by the governor on the same day.

BANKS AND BANKING (5, 7)—INSOLVENCY—GUARANTY FUND—PREFERENCES. Under the bank guaranty act, § 10 [Rem. Comp. Stat., § 3302] only those specified as guaranteed depositors in § 1 [Id., § 3293] participate in the guaranty fund.

SAME (5, 7). In the absence of a statute the creditors of an insolvent bank participate equally and ratably in its assets.

SAME (5, 7). Section 11 of the bank guaranty act [Rem. Comp. Stat., § 3303] providing that losses recovered from the conversion of assets of failed banks shall be credited first to the contingent fund until a certain amount is reached, and then to the guaranty fund, does not show a legislative intent that guaranteed depositors should have a preferred claim against all the assets of the bank; nor does any provision of the act give a preferred right to the guaranty fund against the assets; and it cannot be given by implication.

Application filed in the supreme court January 3, 1922, for a writ of mandate to compel the supervisor

[1]Reported in 206 Pac. 918.

of banking to pay into the guaranty fund moneys realized from the assets of an insolvent bank.   Denied.

*Shank, Belt & Fairbrook,* for relator.

*Clay Allen, J. P. Wall,* and *H. W. Powell,* for Association of Guaranteed Depositors.

*W. V. Tanner* and *John P. Garvin,* for respondents.

*Roberts & Skeel, J. J. Geary, Donworth, Todd & Higgins, Karr & Gregory, H. G. Sutton, C. B. White, Howard Cosgrove, Grinstead & Laube, Ballinger, Battle, Hulbert & Shorts,* and *Peterson & Macbride, amici curiae.*

MAIN, J.—This is an original proceeding in mandamus, by which the relator seeks to establish in the Washington Bank Depositors Guaranty Fund a preference in the assets of the failed Scandinavian-American Bank of Seattle. The cause is submitted to this court upon the petition and demurrer thereto.

The Scandinavian-American Bank closed its doors on June 30, 1921, and since that time its business and assets have been in the process of liquidation by the state supervisor of banking. This bank was a member of the guaranty system created by ch. 81 of Laws of 1917, p. 308. The relator by this proceeding seeks to compel the supervisor of banking to pay into the guaranty fund all moneys realized from the assets of the bank until the amount paid into the fund, together with the contributions from member banks, is sufficient to pay the guaranteed depositors in full. The question is purely one of statutory construction. The relator, who was a guaranteed depositor in the Scandinavian-American Bank, contends that the act should be so construed that the depositors would have a preference right against other creditors to all sums realized upon the assets. The respondents take the position that, aside

from the guaranty fund, the depositors have not a preference right to the assets.

In 1917, the legislature passed two acts, one (ch. 80, Laws of 1917, p. 271) known as the state banking code, which covers comprehensively the organization of banks under the state law and their conduct thereafter. [Rem. Comp. Stat., §§ 3208-3288.] At the same session of the legislature, what is known as the bank guaranty act (ch. 81, Laws of 1917, p. 308) was passed. [Rem. Comp. Stat., §§ 3293-3312.] At the subsequent session of the legislature numerous sections of the guaranty act were amended, apparently in an endeavor to make the system workable. (Laws of 1921, ch. 97, p. 283.) The banking code and the original guaranty act, it thus appears, were passed at the same session of the legislature and received the approval of the governor on the same day, bearing consecutive chapter numbers, and are therefore in *pari materia,* and should be construed together. In 25 R. C. L., p. 1062, it is said:

"The rule that statutes in *pari materia* should be construed together applies with peculiar force to statutes that are contemporaneous or nearly contemporaneous; for, in such case, we have the same minds acting upon the one subject, and it is not to be presumed that the same body of men would pass conflicting and incongruous acts. The presumption is that they had in mind the whole subject under consideration; that while the one general subject is touched in several separate acts, yet the legislative intent was that of a harmonious whole. . . ."

The bank guaranty act, as amended, provides for the creation of a fund, the manner of its administration, and how banks may become members thereof and withdraw therefrom. It also specified the amount which member banks shall contribute to the fund, the purpose of the fund being to meet guaranteed deposits in the event of insolvency of a member bank. It is pro-

vided in § 1 [Rem. Comp. Stat., § 3293] that guaranteed depositors shall be those who have deposited money in a bank subject to check or other form of withdrawal and not specifically secured. Section 2 as amended [Rem. Comp. Stat., § 3294.] provides for the creation of two funds, one called the contingent fund and the other known as the Washington bank depositors fund. It is provided that the expense incurred in the administration of the act shall be paid out of the contingent fund, and also losses which may be sustained through the failure of a member bank. The act is too long to be set out in full, or even summarized in detail. Special attention will be paid only to those sections or provisions which are germane to the question here presented. By § 10 it is provided that the act shall not apply to a bank's obligation

"as an endorser upon bills re-discounted, nor to bills payable, nor to money borrowed from its correspondents or others, nor deposits of public funds in excess of its capital and surplus." [Rem. Comp. Stat., § 3202.]

It is plain, therefore, that under the act the creditors of the bank, other than those specified as guaranteed depositors in § 1, p. 308 [Rem. Comp. Stat., § 3293], do not participate in the guaranty fund. If the failing bank owed employees or had outstanding obligations for rent and other obligations, such as specified in § 10, these creditors are not covered and do not participate in the guaranty fund. Under the state banking code it is clear that in the case of an insolvent bank there was no preference in favor of either class of creditors. The general rule is that, in the absence of statute, all creditors of a failed bank participate equally and ratably in its assets. 7 C. J. 748; *Bank of Blackwell v. Dean,* 9 Okl. 626, 60 Pac. 226; *City of Sturgis v. Meade County Bank,* 38 S. D. 317, 161 N. W. 327. Other cases might be cited, but there seems to be no

doubt about the rule, and in fact it was recognized by this court in the case of *Kies v. Wilkinson,* 101 Wash. 340, 172 Pac. 351.

If, then, the guaranteed depositors have the preference right in the assets of the bank other than the guaranteed fund, it must be by some provision of the guaranty law. This brings us to the sections of that act which call for construction. Section 18 (Laws of 1917, p. 322) provides that, whenever the director of taxation and examination shall take charge of and proceed to wind up the affairs of any guaranteed bank, "he shall as soon as possible issue to each guaranteed depositor, upon proof of claim, a warrant, drawn upon and payable out of the guaranty fund, for the amount of the depositor's claim, which warrant, if there be not sufficient money in the guaranty fund to pay the same, shall bear interest at the rate of five per cent per annum from date until called." [Rem. Comp. Stat., § 3309.]

Section 19, as amended, provides:

"Whenever the director of taxation and examination shall have issued warrants in payment of claims for guaranteed deposits of any failed bank, such claims and all rights of action and remedies of the depositors therefor, shall inure to the director of taxation and examination for the benefit of the contingent and guaranty funds, and all sums realized therefrom shall be paid into such funds." [Rem. Comp. Stat., § 3310.]

Under § 18 it is the duty of the bank examiner to issue a warrant to the depositors for the respective amount of their claims. Under § 19, after having issued the warrant in payment of such claims, the claims of the depositors and all rights of action and remedies thereon passed to the state bank examiner. This officer, after having issued the warrants, is subrogated to the rights of the depositors, and all sums

which he may realize upon their claims as depositors from the assets of the bank are to be paid into the guaranty fund. The bank examiner becomes a creditor of the bank to the amount of the claims which have been transferred to him and is in the same position, so far as the assets are concerned (except the guaranty fund), as are the other unguaranteed creditors. The result would be that if there were sufficient in the guaranty fund to pay fifty per cent of the amount due the guaranteed depositors, and the state bank examiner participating in the other assets with the unguaranteed creditors should realize fifty per cent on the amount of the depositors' claims which had passed to him, this, when paid into the guaranty fund, would be sufficient to liquidate the warrants which had been issued to the depositors in full. Of course, if the assets of the bank were not sufficient to swell the guaranty fund so that it would cover all the warrants, there would be no fund from which they could be paid in full, unless, as contended by the relator, the guaranteed depositors have a prior right to a preferred claim as against all the assets of the bank to the exclusion of unguaranteed creditors. To some extent the relator bases his contention upon the concluding sentence in amended paragraph 11, which is as follows:

"Any losses which may be recovered from the converting of the assets of failed banks into cash, shall be credited first to the Contingent Fund, until the amount of such fund shall have reached the proportions it would have reached at that time, had there been no payments made from said fund on account of losses, the balance of such sums so realized from the assets of failed banks shall be credited to the Guaranty Fund: *Provided*, That no bank shall receive a benefit from any recoveries made from the collection of assets of failed banks in excess of the amount which such bank shall have contributed to the Guaranty Fund because of such

failure." Laws of 1921, p. 286, § 5 [Rem. Comp. Stat., § 3303].

The relator construes this to mean that losses recovered on converting assets of a failed bank into cash shall be paid to the contingent or guaranty fund. The respondents construe it to refer to money coming into the possession of the director under § 19. [Rem. Comp. Stat., § 3310.] This latter section, as already appears, provided that the director of taxation, after he should have issued the warrants, becomes subrogated to the claims and rights of actions of the depositors, and whatever shall be realized by him upon such claims or right of action "shall be paid into such funds," meaning, undoubtedly, the contingent fund and the guaranty fund provided for in § 2, p. 309. While the language of that portion of § 11 quoted [Id., § 3303] is probably not very clear, there is nothing in it which would indicate a legislative intent that the guaranteed depositors were to be given a preferred claim in all the assets of the bank. If they have such right it must necessarily arise by implication, because there is no specific provision giving it. If it had been the legislative intent to create such a right the legislature would undoubtedly have used plain and unequivocal language to that effect. Indeed, if the history of the legislation be looked into, it will appear that an act embodying such a provision was introduced in the legislature at its 1917 session and was rejected. The legislatures of a number of states have created bank guaranty acts, but the decisions of the courts construing them are of little aid because of the material difference in the various statutes. The cases from Oklahoma are especially not applicable because the bank guaranty act in that state directly provided that "the depositors of a state bank or trust company shall be paid in full," and

that the "state shall have for the benefit of the depositors guaranty fund a first lien upon the assets of the state bank or trust company." There is no such provision in the guaranty law in this state. In Mississippi what might be called the banking code and the bank guaranty law are embodied in one act, the guaranty part of the act providing for a lien on the assets in favor of the depositors, in one section. The court, in construing the act and taking into consideration all of its provisions, many of which are similar to the banking code of this state, held that it was not the intention of the legislature to create a lien in favor of the guaranteed depositors upon the assets of the bank outside of the guaranty fund. *Anderson v. Baskin & Wilbourn*, 114 Miss. 81, 74 South. 682. It is true that this decision was by a divided court. In holding that the relator's contention cannot be sustained, we are not required to go as far as did the majority opinion in that case, because, as already pointed out, there is no provision in the guaranty act of this state which creates, or can be construed to create, a lien or preferred claim in favor of the guaranteed depositors upon the assets of the bank which are not included in a guaranty fund.

The writ will be denied.

ALL CONCUR.